## State of Vermont v. Minoca Pollard, a/k/a Monica Pollard

[657 A.2d 185]

No. 92-592

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 20, 1995

*Jo-Ann L. Gross*, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*T. Lamar Enzor*, Rutland, for Defendant-Appellant.

**Johnson, J.** Defendant Monica Pollard, who pled guilty to second-degree murder and was sentenced to a term of fifty years to life imprisonment, appeals his conviction and sentence. We are called upon to review the trial court's rulings that defendant was competent to plead guilty and to waive counsel. Upon review of the record, we conclude that there was insufficient support for the court's competency determinations; accordingly, we reverse.

## I.

On July 9, 1985, defendant fatally stabbed a man in a department store in St. Albans, apparently, because the victim accused him of shoplifting a pair of shoes. Defendant admitted the stabbing at the crime scene, first to the store manager and then to police. Counsel was appointed, and defendant appeared the next day with two public defenders for arraignment on charges of second-degree murder.

Although the offense had occurred only the day before the arraignment, defendant insisted on entering a plea of guilty, contrary to the advice of his attorneys, who had urged him at least to wait twenty-four hours. After making the following observations, which it noted would not be revealed by the transcript, the court, sua sponte, ordered a competency evaluation.

> The defendant appeared anxious and upset over the proceedings. He appeared eager to plead guilty and get the matter over with in a hurry. His eyes appeared to roll back on occasion as he talked. He smiled and grinned frequently when it was inappropriate to the occasion or to his situation. At other times, he appeared angry and hostile. He spoke in terms which suggested an intelligent vocabulary, but with words which did not always make sense in the context they were used. His conversation rambled at times. He appeared eager to talk, but unwilling to listen to either his attorneys or the Court. He frequently crossed his arms, and appeared to be holding his breath as though trying to control something inside himself or to restrain himself. His responses to questions from the Court were frequently inappropriate in context or unintelligible. While he insisted he understood the nature of the proceedings and his procedural and constitutional rights, it was apparent to the Court that he did not. He appeared defiant against the judicial system. He insisted he was not going to the State Hospital. He indicated that he did not mix well with people and demanded that he be held in "quarantine" at the correctional center.

The examination was undertaken by Dr. John O. Ives, who testified at a competency hearing on September 5, 1985, before a different judge. Based on his forty-five-minute examination of defendant, Dr. Ives testified that defendant was competent to stand trial. The doctor's direct testimony covered only eight pages of transcript. Dr. Ives noted that defendant had an unusual pattern of speech, particularly in his lengthy responses to questions about legal matters. From

each such response, Dr. Ives stated, he was able to "extract from each paragraph a sentence" showing comprehension of the question. Dr. Ives did not believe that defendant's unusual speech pattern was a feature of any known psychiatric illness.

The doctor testified that he asked defendant "the usual questions regarding the offense . . . and the functions of the court and its officers." When he was asked if he had talked to defendant about defendant's ability to communicate with his counsel, Dr. Ives replied that defendant said he would not cooperate with counsel regarding an insanity defense or a reduced charge because he considered himself sane and because he considered murder, not manslaughter, to be the appropriate charge. Dr. Ives also testified that defendant's desire to plead guilty may be explained by the fact that he was "institutionalized" – that he felt comfortable and secure in an institutional environment. On cross-examination, the doctor stated that he neither paid attention to, nor relied on, the interaction between defendant and his counsel during the interview. He indicated that his understanding of the competence evaluation was that the defendant must comprehend the offense with which he is charged and the functions of a court and its officers.

A curious event occurred following Dr. Ives's testimony. Apparently, defendant insisted to his counsel that he wanted to take the stand. Counsel informed the court that defendant was taking the stand against his advice. When defendant took the stand, his lawyer asked him to state his name, which he did. Counsel then stated he had no further questions. There were no questions on cross-examination. Defendant was told to retake his seat, and he did so without incident. The trial court issued written findings and conclusions of law, which tracked the limited testimony of Dr. Ives, with this additional finding:

> The Defendant took the stand, with the consent of his Guardian Ad Litem, *and responded to a question by his lawyer in a forthright manner.* After he was excused, he took his seat without objecting or becoming unmanageable.

(Emphasis supplied.)

Based on Dr. Ives' testimony, the court concluded that defendant was competent to enter a guilty plea to the charges. The guardian ad litem who had been appointed prior to the competency hearing was discharged. At a second arraignment hearing on September 12, 1985, defendant pled guilty to second-degree murder. The court accepted the plea and ordered a presentence investigation report for the sentencing hearing.

The day before the October 25 sentencing hearing, defendant's appointed counsel moved to withdraw from the case. At the hearing, the court initially denied the attorneys' motion, but granted the request after defendant indicated during the following colloquy that he wanted to proceed pro se:

The Court: Now, if I do permit these two attorneys to withdraw and if you want to go ahead and represent yourself; is that what you want?

Defendant: Pro se, like you.

The Court: You want to represent yourself pro se?

Defendant: Most certainly, exactly.

The Court: Any doubts in your mind about that?

Defendant: No doubt whatsoever. I think we've already reiterated that.

The Court: Now, let me ask you this: If you do represent yourself, . . . you understand that you cannot afterwards claim any inadequacy of representation?

Defendant: I most certainly cannot. I assume a matter of an individual entering their plea of guilty to adverse effects, that they waive all their rights.

Like I say, waive all their rights to trial and anything adamant to stand on the grounds that preview – like I said, would follow the previews and the entrance of fact of a post-conviction sentencing, and the withdrawal of plea, appeal, and the matter of collateral attack.

. . . .

The Court: Are you aware of the dangers of self-representation?

. . . .

Defendant: Exactly. Like I say, I practiced law in California before. You know, you individuals don't really have all the scoop on my past. You have a little there. It's basically primarily excerpts, but I've got an epilogue that is precise and concise on my own; you see what I'm saying?

Like I say, you've very few. And I practiced law in California myself before, and I'm very aware of the matter of pro person and a pro se and all things of that nature, and we are definitely

aware of the 5th, the 6th, and the 14th Amendment to the Constitution regarding due process of law.

Just say, in this particular instance, due process of law in the 14th amendment, we're aware of the constitutionality.

The Court: How old were you when you first starting studying law?

Defendant: Excuse me? Oh, 19 years old. Six years ago.

. . . .

The Court: And have you acquainted yourself with the statutes of what states?

Defendant: Excuse me? What states? California. California. Well, actually, that's the only state in which I've really been in for the past five years prior to my coming out to the – out to the State of New York to do some novelist work.

. . . .

The Court: You understand that if I . . . allow you to represent yourself and discharge your attorneys, . . . you understand that you must follow all the technical laws here of substantive law, the criminal procedure and the evidence?

Defendant: Most certainly.

. . . .

The Court: Right, and you understand you're going to be up against someone who's a member of the bar?

Defendant: I understand that individual is a member of the bar, right.

The Court: And is the attorney of this county and is the prosecutor of this county?

Defendant: I'm aware of the disposition. I'm aware of the disposition, exactly.

Although the court permitted defendant to proceed pre se, it instructed defendant's attorneys to remain at his side during the remainder of the hearing to answer any questions that defendant might have. Defendant offered no mitigating evidence before he was sentenced. In fact, he offered aggravating evidence, agreeing with the State that he was dangerous, and stating that, under the same circumstances, he would act in the same manner as he had before.

On appeal, defendant makes two claims. First, he contends that the court erred in finding him competent to plead guilty and in failing to advise him of his rights before accepting the plea. Second, defendant asserts that the court denied him his constitutional right to counsel at the sentencing hearing by allowing him to represent himself.

## II.

Defendant argues that the court erroneously found him competent to enter a guilty plea, and that because he lacked the competence to enter the plea, he could not, in pleading guilty, knowingly and voluntarily waive his rights to trial, to confrontation of witnesses, and against self-incrimination. We conclude that the minimum due process standard for competency was not satisfied by the evidence presented at the competency hearing.

As a matter of due process, only a mentally competent criminal defendant can be tried or permitted to plead guilty. *Godinez v. Moran,* 509 U.S. 389, 396-98, 113 S. Ct. 2680, 2685-86 (1993). Competence to enter a guilty plea depends on "whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Id.* at 396, 113 S. Ct. at 2685 (quoting *Dusky v. United States,* 362 U.S. 402, 402 (1960) (per curiam)); accord *State v. Lockwood,* 160 Vt. 547, 554, 632 A.2d 655, 660 (1993). A competency determination is warranted in the first place if the court reasonably doubts the defendant's competence. *Godinez,* 509 U.S. at 401 n.13, 113 S. Ct. at 2688 n.13; see 13 V.S.A. § 4814(a)(4) (court may order psychiatric examination if there is doubt as to defendant's competency to stand trial).

■■ In this case, defendant's peculiar style of gibberish and his haste to plead guilty without considering any defenses to the serious charges he faced raised the question of his competence early on during the first arraignment. Although we might conclude on this record that defendant had a "factual" understanding of the charge and of the trial functions of the judge, the prosecutor, and the defense counsel, it is impossible to conclude that he had a "rational" understanding of the proceedings against him, or that he could rationally consult with counsel. Indeed, what little evidence exists compels the contrary conclusion. The examining physician's understanding of the competence determination appeared to be limited to the requirement that defendant comprehend only the charges and the function of the

court personnel.* Further, defendant's deportment and speech hardly indicated that he was able to consult with his attorney rationally. This is a defendant whose garbled speech was nearly impossible to understand, who expressly stated that he did not want to go to the state hospital, who wanted to plead guilty to avoid that event, who refused to take his lawyers' advice at all stages of the case, and who insisted on taking the stand at the competency hearing for no apparent reason. Given these facts, we cannot accept the trial court's conclusion of law that defendant had "sufficient present ability to consult with his lawyer with a reasonable degree of *rational* understanding." *Dusky*, 362 U.S. at 402 (emphasis supplied).

■ In short, the serious questions about defendant's competence first raised by the trial court itself were only compounded by the hearing to determine defendant's competence. Neither the defendant's testimony nor the psychiatrist's opinion of competence established a basis that would allow acceptance of defendant's plea consistent with the minimum standards of due process. *Godinez*, 509 U.S. at 402, 113 S. Ct. at 2688. Therefore, we must vacate defendant's plea, conviction, and sentence, and remand the matter for a determination of whether defendant is currently competent to stand trial. *Pate v. Robinson*, 383 U.S. 375, 386-87 (1966) (it would be inadequate to attempt to determine defendant's competence at time of trial, but State may retry defendant if he is found competent).

### III.

■ ■ Because, at least technically, the court's ruling allowing defendant to proceed without the services of the public defender still stands, we address the issue of whether he properly waived counsel. Waiver of counsel requires a two-part inquiry: first, whether defendant is mentally competent to waive counsel, and second, whether defendant makes such a waiver knowingly, with full awareness of the consequences of the waiver. *Godinez*, 509 U.S. at 400-01 & n.12, 113 S. Ct. at 2687 & n.12. We conclude that there was an insufficient showing that defendant competently and intelligently waived counsel, with full awareness of the consequences of the waiver.

■ A defendant may waive publicly provided counsel "if the court, at the time of or after waiver, finds of record that [the defendant] has

---

* If there was greater elaboration in a report written by Dr. Ives, neither the trial court nor this Court have had the benefit of it.

acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise according to law." 13 V.S.A. § 5237. This standard accords with the general standard we have developed for waiver of the right to representation, which is that the defendant's waiver must be made competently and intelligently. *State v. Merrill*, 155 Vt. 422, 425, 584 A.2d 1129, 1131 (1990); *State v. Quintin*, 143 Vt. 40, 43, 460 A.2d 458, 460 (1983) (right to counsel must be waived "intelligently and competently").

In making its determination, the trial court should first "conduct sufficient inquiry into the defendant's experience, motives, and understanding of what he is undertaking to determine the quality of his purported waiver," and then "provide a clear explanation of the adverse consequences of pro se representation." *Merrill*, 155 Vt. at 425, 584 A.2d at 1131. Additionally, "defendant may need to be advised of . . . the full nature of the charges against him, the range of allowable punishment, and the consequences of proceeding without the aid of an attorney." *Id.* at 425-26, 584 A.2d at 1131. Under § 5237, the court "shall consider such factors as the person's age, education, and familiarity with the English language, and the complexity of the crime involved." 13 V.S.A. § 5237. While the competency inquiry should be made on the record, this Court is not limited to a review of the record alone to determine whether the waiver was competently and intelligently made. *Merrill*, 155 Vt. at 426, 584 A.2d at 1131-32. Instead, determination of proper waiver requires "a totality of the circumstances approach" that is "identical to that for waiver of other important rights, such as the waiver of *Miranda* rights." *Id.* at 427, 584 A.2d at 1132.

■ In this case, the district court did engage in a colloquy with defendant concerning his desire to waive counsel. Defendant's answers, noted above in part, speak best to the issue of competent and intelligent waiver. While the colloquy indicates that the court touched on some of the dangers of self-representation, such as the defendant's inability to later claim ineffective assistance of counsel, it also demonstrates that the court did not engage in the full-scale *Merrill* determination that is particularly necessary given the facts of this case. As a threshold, *Merrill* requires an inquiry into defendant's experience, motives, and understanding of his undertaking. *Id.* at 425, 584 A.2d at 1131.

The court properly considered defendant's past experience with criminal justice systems in other states, see *State v. Lewis*, 155 Vt. 653, 654-55, 586 A.2d 550, 552 (1990) (mem.); *Merrill*, 155 Vt. at

425-26, 584 A.2d at 1131-32, but it made no inquiry into whether defendant represented himself in those matters. Despite hearing bizarre statements from defendant, the court failed to inquire into defendant's education or background, which might have provided some insight into his ability to make a competent waiver. Apparently, with little further inquiry, the court accepted at face value defendant's statement that he had been studying law in California beginning at the age of nineteen.

Neither did the court make an inquiry into why defendant wished to represent himself. This is particularly troubling in this case because of the conflict between defendant and his assigned counsel concerning their representation; in essence, counsel sought to withdraw because defendant forbade them to put on any evidence to support a finding of incompetence or to defend against the charges. There is no indication that defendant understood that he could obtain alternative counsel who would follow his instructions. Rather than pursuing this course of action, the court allowed defendant to appear pro se, apparently to avoid delay of the sentencing.

■ Most importantly, there is little in the colloquy that discussed the nature of the sentencing proceeding itself or the range of allowable punishment. See *Merrill*, 155 Vt. at 425, 584 A.2d at 1131. Indeed, defendant seems to have misapprehended a very fundamental aspect of sentencing. Following his colloquy with the court, defendant summarized his understanding as follows: "You [the court] impose your sentencing, you put your imposition of sentencing here, and then I don't care whatever you have, because it's left up to me to appeal the decision." This statement indicates that defendant did not understand that a sentence itself is not directly appealable. See *State v. Hohman*, 137 Vt. 102, 105, 400 A.2d 979, 981 (1979).

Although it is not determinative, we note that defendant's performance at the sentencing hearing only proved the dangers of self-representation. Indeed, following defendant's closing statement, the prosecutor responded that defendant's own statement supported an extremely harsh sentence. Defendant's commission of "sentencing suicide" was entirely predictable from his responses during the waiver discussion. In short, we cannot conclude that defendant waived his right to counsel at sentencing either competently and intelligently or with full awareness of the consequences of that waiver.

*Reversed and remanded.*

**Allen, C.J.,** concurring. I agree that the conviction must be reversed and the matter remanded.

Defendant's contentions on appeal are that the record does not support a finding that he was competent to enter a plea pursuant to V.R.Cr.P. 11, that he was not properly advised of his rights during the Rule 11 proceeding and that he did not properly waive his right to counsel at the change of plea hearing.*

The court's obligation under the rule is to determine that the defendant understands the nature of the charge, the penalties, the right to plead not guilty, the consequence of a guilty plea, the implications of the court's refusal to accept a plea agreement and that the plea is voluntary. The defendant had been found to be competent to stand trial a week before the change of plea hearing. While the defendant suggests there were serious questions raised about his competency during those proceedings, he does not ask to have that determination reversed. The competency standard for pleading guilty is the same as the competency standard for standing trial. *Godinez v. Moran,* 509 U.S. 389, 396-99, 113 S. Ct. 2680, 2685-86 (1993). At the change of plea hearing the trial court's task was to make certain that defendant understood the implications of his plea and that his decision was voluntary; not to hold another competency hearing.

Defendant does not seriously argue that he was not properly advised of his rights. A review of the record indicates that the court carefully reviewed them before accepting the plea. *In re Hall,* 143 Vt. 590, 596, 469 A.2d 756, 759 (1983) (rule does not require that the court read verbatim the rights enumerated under subdivision (c)).

The thrust of defendant's challenge is that the record fails to demonstrate that the defendant knowingly and intelligently waived his right to counsel, and with this, I agree. The trial court had a letter from the defendant requesting that appointed counsel "disembarks from the case." The court attempted to determine whether defendant desired to proceed with or without counsel, but its efforts were fruitless and it is unclear from the record what defendant's wishes were. The defendant had the Sixth Amendment right to the assis-

---

* Although defendant failed to properly preserve his claims for appeal, *State v. Thompson,* 162 Vt. 532, 650 A.2d 139 (1994), V.R.A.P. 3(b) requires this Court to review Pollard's claims. V.R.A.P. 3(b) ("In any criminal case resulting in a sentence of life imprisonment, no notice of appeal shall be necessary. . . . The Supreme Court shall in each such case review the record in the interests of justice and pass upon any claim of error therein as if a notice of appeal had been filed, unless the defendant with the advice of counsel has waived such appeal in writing.").

tance of counsel, but could waive that right only if he did so "knowingly and intelligently." *Johnson v. Zerbst*, 304 U.S. 458, 462-65 (1938). He also had a constitutionally protected right to represent himself. *Faretta v. California*, 422 U.S. 806, 832 (1975). The trial court, before proceeding with the Rule 11(c) and (d) inquiries, was obligated to resolve this issue, and the failure to do so was the error requiring reversal. *Godinez*, 509 U.S. at 400-01, 113 S. Ct. at 2687.

