## State of Vermont v. Ronald Bean

[658 A.2d 940]

No. 94-138

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed March 31, 1995

*Peter R. Neary*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellant.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellee.

**Dooley, J.** The State of Vermont appeals an order of the Rutland District Court granting defendant Ronald Bean's motion to suppress

incriminating statements and an attempted guilty plea made by defendant to the trial court during two hearings in which he was not represented by counsel. The State contends that the trial court erred in ruling that defendant did not knowingly and intelligently waive his right to counsel, as secured by the Sixth Amendment to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution, and, further, erred in suppressing the statements and guilty plea. We affirm.

On February 18, 1993, defendant was arrested for violating an abuse prevention order, and the next day, he was brought before the Rutland District Court pursuant to V.R.Cr.P. 5. The affidavit of the arresting officer expressed concern about defendant's mental health, noting that he had recently been in two psychiatric hospitals, that he said "he believes he is the reincarnation of Christ," and that he was talking of suicide to bring inner peace. Although defendant had talked with a public defender prior to his appearance, he rejected her representation. In response to questions from the judge, defendant stated that he had been denied use of the telephone to contact "my proper counsel," who practiced in another state. When asked whether he would like to represent himself, defendant answered, "For now, yes, sir." He would not sign a waiver, however, stating, "I am having a really hard time right now."

The court then proceeded to provide defendant the information required by V.R.Cr.P. 5(d), including that anything that defendant said "here can be used against you during prosecution of the case." The court stated:

> If you don't wish to be arraigned today, you can wait until Monday, that would be the next arraignment day. You are allowed to speak with family and friends before entering a plea today.

The court asked defendant if he would like to read the information and affidavit. Once he had read the information and affidavit, defendant began asking questions and making statements about the charges and his rights. The court did nothing to stop defendant's questions or statements. In the course of his comments, defendant stated: "I know this can be used against me, I was planning on killing that woman that night." He described that he had an axe ready to split her head open, and wood ready to burn her body, but he could not get her to say anything "that I could kill her for." After some more comments by defendant, the court entered a pro forma not guilty plea for defend-

ant, scheduled an arraignment for the following Monday, continued cash bail, and ordered a psychiatric examination of defendant.

On February 22, 1993, defendant appeared before the district court for arraignment. By this time, the State had added the charge of kidnapping to the charge of violating an abuse prevention order. Defendant stated he would not "go with this lawyer," referring to the public defender, and demanded "to go pro se." The court allowed defendant to proceed, and another rambling discussion ensued. Defendant first asked not to plead "until time of trial." At that point, the court entered a not guilty plea for defendant. When the court asked defendant whether he wanted to represent himself at all stages of the proceedings, defendant once again alluded to the out-of-state attorney with whom he had yet to consult, and stated that he wanted to leave open the option of obtaining an attorney. The court commented that obtaining an attorney was advisable due to the serious nature of the charges. Defendant then abruptly announced that he wanted to plead guilty to both charges. The trial court would not accept defendant's changed plea, and the proceeding ended.

The public defender subsequently assumed defendant's representation and moved to suppress the incriminating statements and the rejected guilty plea.[1] In an opinion dated January 30, 1994, the trial court granted the motion. The court ruled that defendant's waiver of the right to counsel was not knowing and intelligent on either of the occasions involved. Because defendant had not waived his right to counsel, the court found his statements could not be used against him. The State has taken an interlocutory appeal from this ruling as it affects the kidnapping charge.[2]

■■ We take the issues in the order they were decided by the trial court. The first issue is whether there was a valid waiver of the right to counsel. Both the Vermont and United States Constitutions provide an accused a right to counsel. See U.S. Const. amend. VI; Vt.

---

[1] The motion to suppress covered "any and all statements alleged to have been made by Defendant." The court's order granted defendant's motion with respect to "any and all statements made by defendant at the two arraignment sessions." The State's certification in connection with the interlocutory appeal points to only two series of statements in issue: defendant's incriminating statements made at the February 19th initial appearance as set forth in the text above, and defendant's attempt to plead guilty at the February 22d arraignment. We have reviewed only those statements.

[2] The State attempted to take an interlocutory appeal with respect to both counts of the information. The trial court held that there were insufficient grounds for an interlocutory appeal on the misdemeanor count of violating an abuse prevention order, but there were grounds to appeal with respect to the felony count.

Const. ch. I, art. 10. The right can be waived if the waiver is made knowingly and intelligently. See *State v. Pollard*, 163 Vt. 199, 206, 657 A.2d 185, 190 (1995). Waiver of this right will not be inferred from doubtful conduct, however, and courts will "indulge every reasonable presumption against waiver." *In re Huard*, 125 Vt. 189, 194, 212 A.2d 640, 644-45 (1965). In a series of cases stretching back thirty years, we have defined the necessary elements of a valid waiver of counsel. See *State v. Pollard*, 163 Vt. at 206–07, 657 A.2d at 190-91; *State v. Lewis*, 155 Vt. 653, 654, 586 A.2d 550, 551 (1990); *State v. Merrill*, 155 Vt. 422, 425-27, 584 A.2d 1129, 1131-32 (1990); *State v. O'Connell*, 147 Vt. 60, 64-66, 510 A.2d 167, 169-70 (1986); *State v. Quintin*, 143 Vt. 40, 43-44, 460 A.2d 458, 460-61 (1983); *State v. Ahearn*, 137 Vt. 253, 260-65, 403 A.2d 696, 700-04 (1979); *State v. Hartman*, 134 Vt. 64, 65-67, 349 A.2d 223, 224-25 (1975); *In re Huard*, 125 Vt. at 194-95, 212 A.2d at 644-45; *In re Mears*, 124 Vt. 131, 138-39, 198 A.2d 27, 32 (1964). The elements are provided in part by statute. See 13 V.S.A. § 5237. Normally, the elements must be shown by the record of the trial court proceedings, although in a relatively close case the record may be supplemented to show defendant's actual knowledge and understanding. See *Merrill*, 155 Vt. at 426, 584 A.2d at 1131-32.

The evidence supports the trial court's conclusion that there was not a knowing and intelligent waiver of counsel at either hearing. See *In re Huard*, 125 Vt. at 194, 212 A.2d at 644 (conclusion of trial court that there was no intelligent waiver upheld where supported by the evidence). At neither hearing was there an inquiry into defendant's experience, motives and understanding to determine the quality of the waiver. See *Hartman*, 134 Vt. at 66, 349 A.2d at 225. There was no attempt to explain the possible adverse consequences of waiver. See *Ahearn*, 137 Vt. at 262, 403 A.2d at 702. At both hearings, defendant's statements were inconsistent and often bizarre, indicating an inability to comprehend what was occurring. See *State v. Pollard*, 163 Vt. at 203–06, 657 A.2d at 188-90. Also, there was confusion at both hearings about the nature of the charges. Indeed, the major charge of kidnapping, punishable by life in prison, was not filed until after the first appearance, so defendant could not have appreciated the risk at the first hearing. At the first hearing, defendant complained that he had been prevented from contacting his lawyer, and he refused to sign a written waiver because he was "having a real hard time right now." At the second hearing, he still had not contacted his lawyer.

The second issue before us is whether the rejected guilty plea and the incriminating statements should have been suppressed. The trial court decided this issue on constitutional grounds, ruling that because the statements and attempted plea were fruits of a violation of the right to counsel, they must be suppressed. The State argues that the remedy is inappropriate because it is used only to deter police misconduct, and not court errors, and is not necessary to protect the underlying right.

■ We have a preference for deciding issues on nonconstitutional grounds. See, e.g., *In re Club 107*, 152 Vt. 320, 322, 566 A.2d 966, 967 (1989). We conclude that the trial court's action was proper under provisions of the Vermont Rules of Evidence and the Vermont Rules of Criminal Procedure and affirm on that basis. As a result, we do not decide whether the trial court's remedy was necessary to implement defendant's constitutional right to counsel.

■■ For purposes of analysis, it is helpful to distinguish between the rejected plea of guilty and the incriminating statements. The former is inadmissible irrespective of whether there was a violation of the right to counsel. Vermont Rule of Evidence 410 provides in pertinent part:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant or ward who made the plea or was a participant in the plea discussions:
> (1) a plea of guilty which was later withdrawn;
> . . . .
> (3) any statement made in the course of any proceedings under Rule 11 of the Vermont Rules of Criminal Procedure or comparable state or federal procedure regarding either of the foregoing pleas; . . . .

See also V.R.Cr.P. 11(e)(5) (similar provision). Neither of the two exceptions to this provision are applicable here. Although the language of Rule 410 "is not completely apt," 23 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5343, at 360 (1980), we conclude that it is intended to cover the situation where a plea is not

accepted. See *id.* The need for a broad interpretation of the word "withdrawn"[3] was anticipated in the Reporter's Notes as follows:

> The rule is silent on the effect of the collateral overturning of a judgment based on a plea of guilty. In such a case, the plea should be treated as withdrawn.

Reporter's Notes, V.R.E. 410. Under Criminal Rule 32(d), a guilty plea may be withdrawn for any "fair and just reason." This language, and the more restrictive standard applicable when the motion is made after sentencing, are met where "there is evidence that the plea was not voluntary or not made with the advice of counsel." Reporter's Notes, V.R.Cr.P. 32(d), at 151. It makes no sense to distinguish between a situation where a plea is rejected because it is not completely voluntary, or is uncounseled, and a situation where the plea is accepted, but later stricken for exactly the same reason. The court was correct in ruling that defendant's attempted guilty plea could not be used against him.[4]

■■ We reach the same conclusion with respect to the incriminating statements, although on a different rationale. The statements were made at defendant's initial appearance before a judicial officer, governed by Criminal Rule 5. The purposes of the appearance are very limited: to determine whether probable cause is present, V.R.Cr.P. 5(c); to inform defendant of the charges, certain rights with respect to them, the circumstances under which pretrial release might be secured, and the approximate schedule of further pretrial proceedings if defendant is not represented by counsel, *id.* 5(d); to determine the arraignment date, *id.* 5(f); and to determine the conditions for defendant's release, if any, *id.* 5(g). A subsection of the rule specifically relates the nature of the proceedings to defendant's right to counsel:

> (e) **Assignment of and Consultation with Counsel.** No further proceedings shall be had until counsel has been

---

[3] It is apparently common to use the concept of deemed withdrawal to cover a guilty plea that is not accepted. For example, in a leading prerule case of *People v. Hamilton*, 383 P.2d 412, 416, 32 Cal. Rptr. 4, 8 (1963), *overruled on other grounds by People v. Morse*, 388 P.2d 33, 36 n.2, 44, 36 Cal. Rptr. 201, 205 n.2, 212 (1964), the California Supreme Court applied a statute that stated that where a plea is not "accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn."

[4] We see no significance in the fact that the trial court suppressed the guilty plea, while the rule makes the guilty plea "not admissible." Although the language is different, the effect of suppression is the same as a ruling of inadmissibility.

assigned, if the case is an appropriate one for such assignment, and until the defendant and his counsel have had an adequate opportunity to confer, unless the defendant has intelligently waived the right to be represented by counsel.

V.R.Cr.P. 5(e). The purpose of the subsection is to protect the right to counsel, as explained in the Reporter's Notes:

Under the rule, assignment of and consultation with counsel must be allowed before any further steps are taken at the Rule 5 hearing. If the arraignment itself is to be held at the hearing, as permitted by Rule 5(f), counsel must be present, for arraignment is a "critical stage." The decision as to when to plead is so intertwined with the decision what to plead that counsel must be assigned prior to the Rule 5(f) determination.

(Citations omitted.) The rule creates a bright line that obviates the need for case-by-case adjudication of whether the right to counsel has been properly honored.

Proceedings in this case crossed the bright line without the intelligent waiver of counsel required by the rule.[5] See *State v. Pollard*, 163 Vt. at 210, 657 A.2d at 192, Allen, C.J., concurring (before going on to Rule 11 inquiries, trial court was required to resolve whether counsel was properly waived; failure to do so was error). At defendant's initial appearance, after it was clear that a proper waiver of counsel was impossible, and after the court informed defendant of the matters specified in Rule 5(c), the court continued on, apparently in the hope it could arraign defendant on that day. In fact, the court stated defendant could consult with family and friends "before entering a plea today," and at the end of the proceeding entered a pro forma not guilty plea. As a direct consequence of the court's continuing the proceedings beyond the purposes permitted by Rule 5, defendant, without benefit of counsel, made the incriminating statements now in issue.

We must decide the proper remedy for a violation of Rule 5(e). Although the State's argument is related to the constitutional violation found by the trial court, the State's essential point is still

---

[5] We addressed Rule 5(e) in *State v. Ahearn*, 137 Vt. 253, 258, 403 A.2d 696, 700 (1979), where the trial court entered a "pro forma" plea of not guilty for an uncounseled defendant who had not waived counsel. Because this action preserved all rights and defenses and caused no prejudice to defendant, we found no error in this procedure. *Id.* This procedure was also available to the trial court, but the trial court did not use it.

relevant. That is, the State takes the position that we should not employ a remedy that excludes the evidence from consideration because such a remedy is employed only to deter police misconduct, and the incriminating statements here were "gratuitously, spontaneously and voluntarily made."

We have often held, however, that suppression is the proper remedy for violation of a statute or court rule. See, e.g., *State v. Forcier*, 162 Vt. 71, 74, 643 A.2d 1200, 1201 (1994) (because Criminal Rule 3 is designed to codify and enhance protections given by Fourth Amendment, remedy for violation is suppression); *State v. Yudichak*, 147 Vt. 418, 421, 519 A.2d 1150, 1152 (1986) (in DUI processing, giving of blood test, without offering breath test as required by statute, necessitates suppression of test results); *State v. Nicasio*, 136 Vt. 162, 166, 385 A.2d 1096, 1099 (1978) (violation of requirement of public defender act to inform detained suspect of right to counsel requires suppression of subsequent statements), *overruled on other grounds by State v. Savo*, 139 Vt. 644, 647, 433 A.2d 292, 294 (1981). Many of these cases have involved a statutory right to counsel. See *State v. Duff*, 136 Vt. 537, 540, 394 A.2d 1145, 1146 (1978); *Nicasio*, 136 Vt. at 166, 385 A.2d at 1098-99. Although they have involved violations of the right to counsel by law enforcement officers, the rationale for the remedy has not been deterrence of police misconduct. As we explained in *State v. Duff*:

> When a driver makes a complicated decision, without the option of consulting counsel as is his statutory right, he should not be bound by that decision, since he might with counsel have made it differently. Therefore, we have no hesitation in holding that the failure of law enforcement officers to advise the defendant of his right to counsel as provided in 23 V.S.A. § 1202(b) mandates a suppression of the results of the breath test.

136 Vt. at 540, 394 A.2d at 1146. The rationale applies to "any statement obtained otherwise than by statutory compliance." *Nicasio*, 136 Vt. at 166, 385 A.2d at 1099.

In essence, the State asks that we not fashion remedy to redress the violation of the rule, even though the consequences of the violation are exactly what the rule was intended to prevent. Although defendant's statements were spontaneous and voluntary, as the State argues, they were made without the advice of counsel. In our view, the only way we can assure that defendant has the effective assistance of

counsel and a fair trial is to prevent adverse consequences from being imposed on him when proceedings go forward improperly without counsel. That remedy is fully consistent with the bright line standard Rule 5(e) creates and with the remedies we have fashioned for violation of the statutory right to counsel.

We are not persuaded by the State's argument that we are improperly using an exclusionary rule. Although in a broad sense we are suppressing evidence, it is evidence that came into existence because of a lack of compliance with the rule. The need here is not to deter; instead, it is to give defendant the benefit of counsel and to enforce procedures created to protect the right to counsel.

*Affirmed.*