### State of Vermont v. Charles Gilman

[787 A.2d 1238]

No. 99-332

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed November 9, 2001

*Robert Butterfield,* Caledonia County Deputy State's Attorney, St. Johnsbury, and *Jane Woodruff,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*David C. Sleigh* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellant.

**Dooley, J.** Defendant Charles Gilman appeals a conviction for operating under the influence of intoxicating liquor (OUI) pursuant to 23 V.S.A. § 1201(a)(2), entered on a conditional plea. On appeal, defendant argues that the Caledonia District Court erred in failing to suppress evidence that he refused to take a breath test and allowing such evidence to be introduced pursuant to 23 V.S.A. § 1202(b). He argues that his refusal was obtained in violation of his statutory right to counsel because: (1) his refusal to provide a breath sample was not voluntary because he was not afforded a meaningful opportunity to consult with a public defender, and (2) the police's failure to provide consultation with an interested party working on defendant's behalf rendered his refusal involuntary. We reverse on the first issue and do not reach the second.

The material facts are not in dispute. At approximately 5:30 p.m., on October 9, 1998, defendant was stopped, arrested, and processed for OUI by a Vermont state trooper. At the barracks in St. Johnsbury, as part of the arrest procedure, the trooper read to defendant from a standardized "implied consent" processing form, explaining defendant's statutory implied consent rights to him. When asked if he wished to consult an attorney before deciding to submit a breath sample for analysis, defendant answered affirmatively and gave the trooper the name of a specific attorney to call. The trooper reached the named attorney, but she was unable to speak with defendant because she was a state's attorney in another county at the time. Defendant told the trooper that he did not know any other attorney to call, so the trooper gave defendant a list of public defenders. Defendant selected an attorney from the list, and the trooper twice tried to contact the attorney without success. The trooper then called the remaining nine attorneys on the list, but reached only one, who advised him that she was no longer a public defender.

In all, the trooper made twelve phone calls to eleven attorneys between 6:40 p.m. and 7:10 p.m. The trooper's efforts met with futility primarily because, at the time, the Defender General's Office did not provide state-wide, on-call service on weekdays between 4:30

p.m. and 9:00 p.m.[1] At the end of this period, defendant was again asked to provide a breath sample, but refused.

In October 1998, an information was filed against defendant charging him with misdemeanor OUI in violation of 23 V.S.A. § 1201(a)(2). In November 1998, a hearing was held regarding defendant's civil license suspension pursuant to 23 V.S.A. § 1205(a). Defendant argued at that hearing that he was denied his statutory right to counsel. In December 1998, defendant filed a motion to suppress use of the refusal in the criminal case because, he argued, his statutory right to counsel was violated. Defendant asserted the same violation during both the civil and criminal proceedings, namely, that because the Defender General did not provide twenty-four hour public defender coverage as required by 23 V.S.A. § 1202(g), he was denied a meaningful opportunity to consult with counsel and his refusal to take the test was involuntary. On January 26, 1999, the court ruled on defendant's motion; it concluded that defendant's "refusal was not obtained in violation of his statutory right to counsel," and entered judgment for the State in the civil suspension proceeding.[2] The court also denied defendant's motion to suppress evidence of the refusal in the criminal case. On July 23, 1999, defendant entered into a conditional plea, reserving the right to appeal the court's denial of his motion to suppress, and on July 28, 1999, defendant filed his notice of appeal to this Court.

On appeal, defendant renews his arguments made in the trial court. He argues that because there was no public defender available as directed by § 1202(g), he was denied any meaningful opportunity to consult with counsel; hence, his refusal was involuntary. He argues that compliance with § 1202(g) is a necessary predicate before evidence of a refusal can be admitted against him.

The State's position below, and again here on appeal, is that the Legislature's 1997 amendment to 23 V.S.A. § 1202(c), in response to this Court's decision in *State v. Garvey*, 157 Vt. 105, 595 A.2d 267 (1991), governs and makes clear that an operator in defendant's position has thirty minutes to consult with an attorney, and if the

---

[1] The Defender General's Office has since changed this practice to provide twenty-four hour, seven-day a week coverage.

[2] Defendant filed a notice of appeal from the judgment in the civil suspension proceeding on February 26, 1999, but in an unpublished entry order, this Court ruled this notice of appeal was untimely. *State v. Gilman*, No. 99-107 (Vt. Apr. 27, 1999) (unpublished mem.). Thus, the decision in the civil suspension proceeding is not properly before this Court, and we rule only on defendant's appeal from the criminal OUI charge.

thirty minutes passes with or without consultation, then the operator must decide whether to submit to an alcohol level test. The amended § 1202(c) reads as follows:

A person who is requested by a law enforcement officer to submit to an evidentiary test or tests has a right as herein limited to consult an attorney before deciding whether or not to submit to such a test or tests. The person must decide whether or not to submit to the evidentiary test or tests within a reasonable time and no later than 30 minutes from the time of the initial attempt to contact the attorney. The person must make a decision whether or not to submit to the test or tests at the expiration of the 30 minutes regardless of whether a consultation took place.

Relying on the "regardless of whether a consultation took place" language at the end of § 1202(c), the State argues that this case involves a simple matter of statutory construction, and the trial court agreed.

The resolution of an appeal to this Court often depends upon how the issues are framed here. This case is a very good example of that point. This case is not about statutory construction of 23 V.S.A. § 1202(c) or about situations where an OUI detainee cannot reach a lawyer despite the presence of full time defender coverage throughout the state. Nor is the issue, as the State argues, whether the trooper acted in good faith in calling ten lawyers who had no responsibility to answer the phone and would not be compensated for doing so.

The issue instead is whether defendant has any remedy for failure of the State of Vermont to comply with 23 V.S.A. § 1202(g) by making legal services available to him to decide whether to take the breath test, as the Legislature directed. Section 1202(g) commands:

The defender general shall provide statewide 24-hour coverage seven days a week to assure that adequate legal services are available to persons entitled to consult an attorney under this section.

It is undisputed that the Defender General failed to comply with this mandate, leaving a gap in coverage between the end of normal business hours and the late evening hours. Thus, as a result of the failure of the executive branch of the state to comply with the law,

defendant could not obtain legal advice to aid him in weighing his options as the law intended.

If there is any lesson in our OUI decisions, it is that the failure of the State to comply with counsel-related rights of an OUI detainee has consequences for the State in OUI prosecutions. This lesson came first in *State v. Duff*, 136 Vt. 537, 394 A.2d 1145 (1978), where this Court was required to determine the reach of 23 V.S.A. § 1202(b),[3] which provided the statutory right to "consult an attorney prior to deciding whether or not to submit to [a] chemical test." *Id.* at 538, 394 A.2d at 1146. Drawing on the obligation of a law enforcement officer under the public defender act to notify a public defender when an individual is detained under circumstances creating a right to counsel, see *State v. Nicasio*, 136 Vt. 162, 166, 385 A.2d 1096, 1099 (1978), we held that the statute requires a law enforcement officer to notify a detainee of the right to consult an attorney. *Duff*, 136 Vt. at 539, 394 A.2d at 1146. Because the officer failed to notify the defendant of this right in *Duff*, we suppressed the result of the defendant's breath sample, reasoning:

> When a driver makes a complicated decision, without the option of consulting counsel as is his statutory right, he should not be bound by that decision, since he might with counsel have made it differently. Therefore, we have no hesitation in holding that the failure of law enforcement officers to advise the defendant of his right to counsel as provided in 23 V.S.A. § 1202(b) mandates a suppression of the results of the breath test.

*Id.* at 540, 394 A.2d at 1146.

We reinforced the *Duff* remedy in *State v. Carmody*, 140 Vt. 631, 442 A.2d 1292 (1982), where the law enforcement officer refused to allow the OUI detainee to make a telephone call and the detainee refused to take the breath test. We found the restraint on defendant's actions to be inconsistent with the statutory refusal and held that the State could not offer the refusal into evidence in an OUI prosecution. *Id.* at 636, 442 A.2d at 1295. We reasoned:

> Since the impact of actions seen as coercive or restrictive is almost impossible to measure after the fact, as we have noted

---

[3] The portion of 23 V.S.A. § 1202(b) construed in *Duff* is currently codified in relevant part at 23 V.S.A. § 1202(c), which now controls a defendant-driver's right to counsel before submitting to an evidentiary alcohol concentration test.

in connection with improprieties directed at juries, we are compelled to the position that a mere demonstration that such actions occurred creates a flaw in the procedure.

*Id.* (citations omitted); see also *Pfeil v. Rutland Dist. Ct.*, 147 Vt. 305, 310, 515 A.2d 1052, 1056 (1986) (*Carmody* governs where officers listen to conversations between the OUI detainee and the contacted public defender).

We applied the *Duff* remedy in *Garvey*, a case where the detaining law enforcement officers made no procedural violation, but defendant could not reach a public defender within the statutory thirty-minute period. When defendant refused to decide whether to take the breath test without talking with a lawyer, the officer determined that defendant had refused to take the test. We held that the defendant's actions could not be considered a refusal and reversed the decision to suspend defendant's operator's license. *Garvey*, 157 Vt. at 106, 595 A.2d at 268; see also *State v. Berini*, 167 Vt. 565, 566, 701 A.2d 1055, 1056 (1997) (mem.). More recently, relying on *Garvey*, we applied the *Duff* remedy in a case where the form used by the officers did not advise the detainee of the right to speak with a public defender even if the detainee is not indigent. See *State v. Madonna*, 169 Vt. 98, 101-02, 726 A.2d 498, 501 (1999).

In each of the above cases, we deprived the prosecution of the power to use a breath test result, or a refusal to take a breath test, on the finding of a counsel-related violation of the defendant's statutory rights. This remedy was not commanded, or even authorized, by statute. We adopted it because we would not allow the State to take advantage of its own violation of the law. The critical point was made in *Duff*: "When a driver makes a complicated decision, without the option of consulting counsel as is his statutory right, he should not be bound by that decision, since he might with counsel have made it differently." *Duff*, 136 Vt. at 540, 394 A.2d at 1146.

We note that in adopting a form of suppression remedy for violation of a statutory right to counsel in OUI cases, we are following an approach accepted in other jurisdictions. See, e.g., *Copelin v. State*, 659 P.2d 1206, 1214-15 (Alaska 1983) (violation of statutory right to counsel in drunk driving case led to exclusion of subsequently obtained evidence even though there was no suppression remedy explicitly authorized in statute where statute contained civil and criminal sanctions); *State v. Vietor*, 261 N.W.2d 828, 832 (Iowa 1978) (violation of statutory right to counsel in drunk

driving case led to suppression of evidence of refusal); *City of Lakewood v. Waselenchuk*, 641 N.E.2d 767, 770 (Ohio Ct. App. 1994) (violation of statutory right to counsel in drunk driving case violated the defendant's due process rights; remedy was exclusion of test results). This approach is also followed in this and other jurisdictions where the violation of the statutory procedures involves rights other than the right to counsel. See *State v. Yudichak*, 147 Vt. 418, 421, 519 A.2d 1150, 1152 (1986) (administering blood test, without offering to give a breath test as required by the statute, necessitates suppression of test results); see also *Commonwealth v. Eisenhart*, 611 A.2d 681 (Pa. 1992) (in drunk driving case, State took defendant's blood in violation of statute; evidence excluded); *Commonwealth v. Tarbert*, 535 A.2d 1035 (Pa. 1987) (drunk driving roadblock exceeded statute authorizing vehicle stops by police; evidence excluded); *State v. McCrossen*, 385 N.W.2d 161 (Wis. 1986) (violation of statutory right to second alcohol concentration test in drunk driving case led to exclusion). The court in *McCrossen* reasoned that the suppression remedy was appropriate as follows:

> Because the legislature intended the second test as a check on the reliability of a first test, we consider suppression of the state's chemical test results to be an appropriate sanction, rather than dismissal [of the charges]. We have previously recognized the appropriateness of suppression as a sanction for the failure to make available statutorily required evidence
> . . . .
> . . . This construction recognizes that the right to a second test is the legislatively imposed *quid pro quo* for a driver's implied consent to testing for alcohol concentration.

*McCrossen*, 385 N.W.2d at 170.

The suppression remedy is also consistent with our approach for other similar nonconstitutional violations. In *State v. Bean*, 163 Vt. 457, 658 A.2d 940 (1995), the trial court violated V.R.Cr.P. 5(e) by going beyond the matters properly part of an initial appearance before defendant could consult counsel. During these proceedings, defendant confessed to the offense. In affirming the trial court's ruling that the State could not use the confession at trial, we declined to address the defendant's constitutional arguments and affirmed the trial court's suppression on the ground that admitting such evidence would constitute violations of V.R.Cr.P. 5(e) and V.R.E. 410. Thus,

we held that exclusion is an appropriate remedy for a statutory violation that interferes with a defendant's right to counsel. *Bean*, 163 Vt. at 465, 658 A.2d at 946. We reasoned:

> In essence, the State asks that we not fashion [a] remedy to redress the violation of the rule, even though the consequences of the violation are exactly what the rule was intended to prevent. . . . In our view, the only way we can assure that defendant has the effective assistance of counsel and a fair trial is to prevent adverse consequences from being imposed on him when proceedings go forward improperly without counsel. . . .

> We are not persuaded by the State's argument that we are improperly using an exclusionary rule. Although in a broad sense we are suppressing evidence, it is evidence that came into existence because of a lack of compliance with the rule. The need here is not to deter; instead, it is to give defendant the benefit of counsel and to enforce procedures created to protect the right to counsel.

*Id.* at 465-66, 658 A.2d at 946. Again, our approach is consistent with that adopted in other states. See *Vorhauer v. State*, 212 A.2d 886 (Del. 1965) (adopting the *McNabb* rule for a state violation of prompt presentment rule); *State v. Flynn*, 464 A.2d 268 (N.H. 1983) (violation of state privacy act in obtaining warrant led to exclusion of fruits of warrant); *State v. Davis*, 666 P.2d 802 (Or. 1983) (violation of state law codifying *Terry* stop procedure led to exclusion); *State v. Jones*, 566 P.2d 867 (Or. 1977) (rape conviction reversed and evidence excluded, in part due to ethical violation by prosecutor); *State v. McKnight*, 352 S.E.2d 471 (S.C. 1987) (exclusion appropriate for violation of statute where no good faith effort to comply).

It is undisputed that the State of Vermont, through the Defender General, failed to comply with §1202(g) "to assure that adequate legal services are available to persons entitled to consult an attorney" during the time period in which defendant was stopped. The statute was passed to make legal services available to persons in defendant's position. Noncompliance with the statute produced exactly the situation the Legislature sought to avoid — defendant was required to decide whether to take the test without professional advice. Apparently unknowingly, he chose the course of action that involved the commission of an additional crime. While it is conceivable that

defendant would not have reached a lawyer even if the Defender General had complied with the law, as discussed below, this very small possibility should not undercut the need for a remedy in this case.[4] As we held in *Carmody*, we cannot always predict what would have occurred if the State had complied with the law and, therefore, "we are compelled to the position that a mere demonstration that such [violations of the law] occurred creates a flaw in the procedure." 140 Vt. at 636, 442 A.2d at 1295.

In applying a suppression remedy, we are mindful that we have not made this defendant immune from criminal prosecution or deprived the State of the main evidence it needs to convict him. The State can still show that defendant operated under the influence of intoxicating liquor based on defendant's actions observed by the trooper. The only evidence unavailable to the State is evidence of defendant's refusal to take the test. See *McCrossen*, 385 N.W.2d at 170.

To the extent it answers the above analysis at all, the State appears to make three points. First, the State argues that the trooper acted in good faith, and, therefore, exclusion of the evidence was improper. We agree that the failure of the trooper to reach a lawyer was beyond his control, but find that irrelevant to the result. The exclusionary rule developed in the *Duff* line of cases is not aimed exclusively at deterring illegal conduct by police officers. The officer in *Garvey* acted in good faith, as did the officer in *Madonna*. As we said in *Bean*, "the only way we can assure that defendant has the effective assistance of counsel and a fair trial is to prevent adverse consequences from being imposed on him when proceedings go forward improperly without counsel." 163 Vt. at 465-66, 658 A.2d at 946.

Second, the State asserts that its result is commanded by the plain language of § 1202(c). As we recognized in *Madonna*, 169 Vt. at 100-01, 726 A.2d at 500, the Legislature intended by its amendment to § 1202(c) to overrule *Garvey*. If the Legislature had done nothing more, we would be persuaded by this argument. But the Legislature also added § 1202(g) commanding the Defender General to create statewide, full-time coverage to assure that adequate legal services be available to those stopped for OUI and asked to take a blood-

---

[4] It is also conceivable, but highly unlikely, that a lawyer would have advised defendant not to take the test, placing him in the same position as he would have been in had he acted without professional advice.

alcohol test. It is important to note that the *Garvey* holding did not rest on an independent obligation of the Defender General to provide counsel to advise OUI detainees on whether to take the test. No such obligation existed prior to the adoption of § 1202(g).

The situation before us is indistinguishable from the situation before the Court in *Duff* and most of the cases that came thereafter. For example, in *Carmody*, defendant refused to take the breath test, and the State offered the refusal in evidence in the OUI case, exactly the situation present in this case. Then, as now, the drunken driving statutes specifically provided that a "refusal may be introduced as evidence in a criminal proceeding." 23 V.S.A. § 1202(b) (formerly codified at 23 V.S.A. § 1205(a)). The statutory command could not be plainer. Despite the language, however, this Court ruled that the breath test refusal could not be introduced in evidence, implementing a court-created exclusionary rule to enforce defendant's right to consult counsel. With respect to the court-created exclusionary remedy, *Carmody* controls this case.

Finally, the State asserts that because defendant might not have reached a lawyer even if the Defender General had complied with § 1202(g), there can be no remedy if the Defender General doesn't comply with § 1202(g). The State argues that if defendant had been able to reach an attorney, notwithstanding the fact the Defender General had not implemented the coverage mandated by § 1202(g), application of § 1202(c) would not have been unlawful. It attempts to prove thereby that defendant must be basing his argument on the lack of a consultation, not noncompliance with § 1202(g). We disagree with this reasoning. If defendant had reached a lawyer despite the State's noncompliance with § 1202(g), he would have no injury from the violation of the law. Having obtained the legal advice the statute contemplated, defendant would be in no position to seek suppression of his refusal, or the test result, because he would not have been prejudiced by the violation and not because, as the State suggests, there would have been no violation.

If the State abides by its responsibility under § 1202(g), defendant has no argument that a breath test result, or a refusal, must be suppressed. In such a case, the issue of timing is wholly controlled by § 1202(c), and as we held in *Madonna*, defendant must decide whether to take the test within thirty minutes, whether or not defendant obtains advice from a lawyer. 169 Vt. at 99, 726 A.2d at 499. If the State refuses to comply with § 1202(g) as it did when this

case arose, the result should be different, and the breath test result, or the refusal to take a test, should be suppressed.

In his famous dissent in *Olmstead v. United States*, 277 U.S. 438, 485 (1928), Justice Brandeis captured the essence of what is wrong with the State's position in this case:

> Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.

The State broke the law, and as a result, defendant did not receive the advice he should have to determine how to respond to a police request for a blood alcohol test. The only fair remedy is to suppress the result of defendant's uninformed choice. We cannot endorse the trial court's decision to ignore the State's refusal to comply with the law.

Because of our disposition of defendant's first issue on appeal, it is not necessary to address his second claim of error.

*Reversed and remanded.*

**Amestoy, C.J.,** dissenting. The majority aptly observes that the resolution of an appeal to this Court often turns on how the issues are framed. It is equally valid to note that when the resolution is not unanimous it is because, as here, there is disagreement over the framing.

At issue is not — as the majority would have it — whether the defendant ought to have a remedy for the State's failure to provide statewide twenty-four hour coverage seven days a week for persons entitled to consult an attorney under 23 V.S.A. § 1202. The issue is whether we have construed the statutory scheme governing the administration of a blood alcohol concentration test "to balance the rights of individual motorists against the State's need to effectively enforce the laws." *State v. Madonna*, 169 Vt. 98, 100, 726 A.2d 498, 500 (1999). Because I believe the majority's remedy upsets the balance the Legislature sought to achieve between providing

motorists the opportunity to consult with an attorney and the need to administer a test within thirty minutes to provide an accurate reading of the motorist's blood alcohol concentration, I respectfully dissent.

Contrary to the majority's assertion, defendant in this case *does* premise his claim of error on the lack of a meaningful opportunity to consult an attorney. As defendant conceded at oral argument, his argument would extend to those circumstances where — despite the provision of statewide twenty-four hour, seven day a week coverage by the Defender General — counsel may be unavailable due to competing demands for their services. Indeed, it would be illogical for defendant to argue otherwise, since under defendant's rationale, it is proof of the unavailability of the Defender General's legal service that renders the refusal involuntary, not proof of whether the Defender General has statewide twenty-four hour, seven day a week coverage.*

The defendant's right to refusal and right to counsel are purely statutory. See *State v. Brean*, 136 Vt. 147, 151, 385 A.2d 1085, 1088 (1978) ("The right to refuse to submit to a blood or breath test in Vermont is a creature of statute . . . and not the Federal or State Constitutions."); *State v. Fuller*, 163 Vt. 523, 527, 660 A.2d 302, 305 (1995) ("The right to consult with counsel contained in the implied consent law is purely statutory, created by 23 V.S.A. § 1202(c)."). Defendant contends that § 1202(g) evinces a legislative intent to ensure access to adequate legal services. That may be, but the Legislature also intended that a person make a decision about whether or not to submit to the tests within a time certain "regardless of whether a consultation took place." 23 V.S.A. § 1202(c). It is difficult to conceive how the statute could have more plainly expressed the limitation on the right to consult an attorney. When embarking on the process of statutory construction, we have established a clearly articulated hierarchy of available sources and turn first to the "plain, ordinary meaning of the language." *Brennan v. Town of Colchester*, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999) (citation omitted). If we can derive the intent of the Legislature from the plain meaning of the words, our task is normally at an end. See

---

* To put it another way, had the officer been able to put the defendant in touch with a public defender, notwithstanding the fact that the Defender General had not implemented the coverage envisioned in § 1202(g), it could not be seriously maintained that application of § 1202(c) was unlawful.

*Harris v. Sherman*, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) (mem.).

The evidentiary test required to be administered by § 1202 must be administered within a short period of time to provide an accurate reading of the motorist's blood alcohol concentration. See *Madonna*, 169 Vt. at 99, 726 A.2d at 499. Defendant's construction of § 1202(g) would predicate the timeliness of the test on the availability of attorneys. The Legislature chose not to do so. Nevertheless, under § 1202, the police bear the burden of "actually attempting to contact counsel within the thirty-minute time period." *Madonna*, 169 Vt. at 100, 726 A.2d at 500. There can be no dispute that Trooper Letourneau carried the State's burden here; he made a diligent, good-faith attempt to contact counsel as defendant requested.

While the majority asserts that, in this case, exclusion of the evidence is not aimed at deterring illegal conduct by police officers, it applies the remedy to penalize "the State's refusal to comply with the law." As a matter of public policy one may agree that the State ought to fully fund the programs it mandates. But the State's failure to do so — absent constitutional command — has not, until now, triggered the exclusionary rule. If it is the State's lack of adequate funding for a program established by statute that "breeds contempt for the law," better to repeal the statute than be censured by this Court for "breaking the law." I am authorized to state that Justice Skoglund joins in this dissent.