### State of Vermont v. Michael Dorn

[496 A.2d 451]

No. 83-272

Present: Hill, Underwood, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed May 3, 1985

608

*John J. Easton, Jr.,* Attorney General, *Susanne R. Young* and *Wendy S. Collins,* Assistant Attorneys General, and *John E. Perrott,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Valsangiacomo, Detora & McQuesten, P.C.,* Barre, for Defendant-Appellant.

**Gibson, J.** Defendant appeals his conviction on nine counts of welfare fraud under 33 V.S.A. §§ 2581(d) and 2583, for claiming Medicaid reimbursement that exceeded his usual and customary charge to the general public. The convictions arose from defendant's operation of a now defunct Northfield pharmacy. We affirm.

Defendant raises six arguments on appeal: (1) the informations on which he was tried do not allege a statutory violation; (2) if the charges constitute a statutory violation, then the statute is unconstitutionally vague; (3) the trial court erred in refusing to instruct the jury that fraudulent intent was an essential element of the crime; (4) the evidence failed to show that the same drugs were dispensed in both Medicaid and non-Medicaid prescriptions; (5) evidence of the breadth of the state Medicaid program and of defendant's total reimbursements thereunder was unfairly prejudicial; and (6) the trial court erred in refusing to suppress the pharmacy's prescription receipt log and its non-Medicaid prescriptions, obtained during execution of a search warrant.

This prosecution followed several months of investigation, culminating in a search of defendant's barn, pursuant to a warrant, to recover the pharmacy's records. The attorney general then issued a series of informations alleging that defendant had violated 33 V.S.A. § 2581(d) by claiming Medicaid reimbursements for dispensations of brand-name drugs, although he had actually dispensed cheaper generic substitutes. Subsequently, the State filed eighteen more informations, alleging that defendant had filed false claims billing Medicaid at a rate greater than his usual and customary charge to the general public for the same drug, also in violation of § 2581(d). Prior to trial, the State dismissed all but ten counts, leaving one of the "generic substitution" counts and nine of the "usual and customary charge" counts. During trial, the State dis-

missed the remaining "generic substitution" count. Defendant was thereafter convicted of all nine surviving "usual and customary charge" counts.

Viewing the evidence in the light most favorable to the State, *State* v. *Kirby*, 143 Vt. 369, 370–71, 465 A.2d 1369, 1370 (1983), the relevant facts are as follows. On every prescription filled at defendant's drug store, defendant wrote the price upon the corner of the prescription; an identical amount was entered on each customer's receipt. For each Medicaid purchase, the amount was also entered upon Medicaid claim forms, which were certified by defendant as true and submitted to the state for compensation. The amounts entered in defendant's sequential log of all prescriptions filled (hereinafter referred to as the "prescription receipt log") corresponded to the prices entered on the corners of the prescriptions. In all cases, the prices charged for four-ounce and six-ounce sizes of Dimetapp were entered at a higher price for Medicaid customers than for non-Medicaid customers. Thus, defendant's own pharmacy records tended to indicate that defendant charged Medicaid more for Dimetapp than he charged non-Medicaid customers.

I.

Defendant first argues that the informations under which he was convicted do not allege a violation of 33 V.S.A. § 2581 (d). That subsection provides:

> A person who knowingly files, attempts to file, or aids and abets in the filing of a claim for services to a recipient of benefits under a state or federally-funded assistance program for services which were not rendered, *or who knowingly files a false claim or a claim for unauthorized items or services under such a program,* or who knowingly bills the recipient of benefits under such a program or his family for an amount in excess of that provided for by law or regulation, or who knowingly fails to credit the state or its agent for payments received from social security, insurance, or other sources, or who in any way knowingly receives, attempts to receive, or aids and abets in the receipt of unauthorized payment as provided herein

shall be punished as provided in section 2583 of this title. (Emphasis supplied.)

The nine informations charged that defendant "did knowingly file a false claim for reimbursement under . . . the Vermont Medicaid Program." The gravamen of each allegation was that defendant knowingly filed a Medicaid claim in which he falsely certified that the reimbursement reflected his "usual and customary charge to the general public" for the service, while in fact the price claimed from Medicaid actually exceeded that "usual and customary charge."

At issue is the phrase in § 2581(d), "[a] person . . . who knowingly files a false claim or a claim for unauthorized items or services." Defendant challenges the State's view that the phrase can support conviction either for knowingly filing a claim that is false in any respect or for knowingly filing a claim for unauthorized items or services. Defendant argues that, when read in conjunction with other parallel clauses of § 2581, this clause punishes only one who knowingly files a *false* claim for unauthorized items or services, or who files a claim while knowing that payment for the items or services is unauthorized. In other words, defendant claims that the words "false claim" modify the phrase "unauthorized items or services" and cannot be construed alone to support a conviction.

■ We disagree. Giving the statutory phrase its plain and ordinary meaning in an effort to achieve the intent of the legislature, *Northern Rent-A-Car, Inc.* v. *Conway*, 143 Vt. 220, 222, 464 A.2d 750, 751 (1983), it is clear that the word "or" distinguishes two distinct kinds of "claims" and divides two separate and independently operative prohibitions. As used in its ordinary sense, the word "or" marks an alternative, indicating that the various members of the sentence are to be taken separately. *Central Standard Life Insurance Co.* v. *Davis*, 10 Ill. App. 2d 245, 255, 134 N.E.2d 653, 658 (1956), *aff'd*, 10 Ill. 2d 566, 141 N.E.2d 45 (1957). Section 2581(d) thus expressly criminalizes "knowingly" filing either (1) a false claim, or (2) a claim for unauthorized items or services. Defendant's interpretation is erroneous.

## II.

Defendant also claims that 33 V.S.A. § 2581(d) is unconstitutionally vague, or, in the alternative, insufficiently clear to give notice of what acts are prohibited. He states that, if the statute is read to punish filing of "false claims" without the modifying language, as we have concluded above, then the average citizen cannot know what is prohibited. Defendant hypothesizes a prosecution for knowingly filing a claim seeking reimbursement for *less* than the usual and customary charge.

■■ To be valid, a statute must possess sufficient certainty to inform a person of reasonable intelligence as to what conduct is proscribed. *State* v. *Roy*, 140 Vt. 219, 229, 436 A.2d 1090, 1095 (1981). The statutory requirement of knowing falsity means that the State must establish defendant's guilty knowledge beyond a reasonable doubt.

■■ A person who filed a claim for *less* than his or her usual and customary charge to the general public would not have filed a "false" claim as far as the government is concerned, because the usual and customary charge was in fact at least as much as the reimbursement claimed, with no overcharge to the prejudice of the government. A person of reasonable intelligence would understand that deliberate overcharges are what the statute prohibits. *Id.* The statute is sufficiently clear.

## III.

Defendant excepted to the trial court's refusal to instruct the jury that fraudulent intent was an essential element of 33 V.S.A. § 2581(d), to be proven beyond a reasonable doubt. In support of his argument, defendant cites the language of the provisions, the headings of the statutes, the severity of the penalty, and the other phrases in § 2581. Read in conjunction with 33 V.S.A. § 2583, defendant contends, the statute clearly addresses "Fraud."

■■ Unless there is a need to make inferences in order to preserve a statute's effectiveness, "we will not intrude between the legislature and its will as expressed by the plain

meaning of the language selected . . . ." *State* v. *Kerr*, 143 Vt. 597, 605, 470 A.2d 670, 674 (1983). In enacting 33 V.S.A. § 2581(d), the legislature omitted use of the word "fraud." Plainly, that omission, in preference for other language, excluded fraud as an element.

■ Section 2581(d) punishes the knowing submission of a false claim. Knowing behavior clearly connotes conscious, voluntary or purposeful action, as opposed to mistake or carelessness. *United States* v. *Gregg*, 612 F.2d 43, 50 (2d Cir. 1979). The meaning of 33 V.S.A. § 2581(d) "is plain on its face unless we read into it language that is not there." *Kerr, supra,* 143 Vt. at 605, 470 A.2d at 674. It is sufficiently explicit to be enforced according to its terms. See, e.g., *State* v. *Carpenter*, 138 Vt. 140, 142, 412 A.2d 285, 287 (1980). A jury instruction on fraudulent intent was not required.

## IV.

Defendant next argues that, without evidence of what drug actually was dispensed to the general public, acquittal is required as a matter of law.[1] The informations on which defendant was convicted alleged that he sought reimbursement in excess of the usual and customary charges for Dimetapp liquid. Defendant argues that, although his Medicaid customers may have received Dimetapp, there is no evidence that the general public received that liquid rather than a less expensive generic equivalent. Defendant insists that a typical prosecution involves a "comparison shop," with a Medicaid patient and a non-Medicaid patient each having the same prescription filled.

■ Despite defendant's view of how a typical investigation should proceed, no "comparison shop" was necessary in this case. In addition to key testimony from a former employee of defendant describing defendant's practices, acts and admissions, the State's case derived from comparisons of defendant's certified claims seeking Medicaid reimbursement for Dimetapp with defendant's receipts for sales of the same liquid

---

[1] We note, in passing, that, prior to trial, defendant argued strenuously for exclusion of this evidence, on grounds that it was both logically irrelevant and unfairly prejudicial.

to the general public, as both were recorded in defendant's prescription receipt log. Defendant certified that the contents of the Medicaid prescriptions were Dimetapp, and that the compensation claimed by him matched his usual and customary charge for Dimetapp. His usual and customary charges to non-Medicaid customers for Dimetapp, as set forth in the prescription receipt log, were lower than the Medicaid reimbursement claims in every instance. Testimony by one non-Medicaid customer confirmed that she had received a bottle bearing a label indicating that its contents were Dimetapp and had been charged at the lower rate.

The standard for appellate review of denial of a motion for acquittal is whether the evidence, when viewed in the light most favorable to the State, is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt. *Kirby, supra,* 143 Vt. at 370–71, 465 A.2d at 1370. From the evidence contained in the record, a reasonable factfinder could have so found.

## V.

Defendant appeals the trial court's decision to admit certain testimony by the director of the Division of Medicaid, Department of Social Welfare. When the State asked the witness to describe the Medicaid program's total amount of reimbursement and the breadth of pharmacist participation, defendant objected. The State argued that the evidence was necessary to illustrate why the State of Vermont must rely upon the honesty of participating pharmacists to administer the program. The court admitted testimony that 140 pharmacists participated, and that $3.4 million was disbursed each year. The court cautioned the jury not to draw any undue inferential connection between the nine charges on which defendant was being tried and the massive volume of Medicaid claims that are filed annually in Vermont.

The State then asked the director how much defendant himself had been reimbursed during the two years immediately preceding the dates of the alleged offenses. Defendant again objected, pointing out that the total amount allegedly overcharged in the nine counts was $10.86, and that the reference to large amounts of money was unfairly prejudicial. The

State argued that the figures were admissible to show that defendant was familiar with the program, having filed claims regularly. The judge permitted the question on this basis, and the director stated that defendant had received $11,700 in 1980, and $18,000 in 1981. In cross-examination, the witness agreed that there was no particular relation between the dollar figures and the charges against defendant.

A decision regarding the admission of testimony challenged as unfairly prejudicial "involves a balancing of concerns between relevance and prejudice." *State* v. *Angelucci*, 137 Vt. 272, 277, 405 A.2d 33, 35 (1979). The trial judge has "discretion to exclude evidence that is technically relevant if its probative value is outweighed by dangers of prejudice, confusion, or delay." V.R.E. 403, Reporter's Notes. The trial judge has "very substantial discretion" in applying this balancing test. *United States* v. *Long*, 574 F.2d 761, 767 (3d Cir.), *cert. denied*, 439 U.S. 985 (1978). To support a claim of abuse of discretion, defendant must show that the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable. *State* v. *Chambers*, 144 Vt. 377, 381, 477 A.2d 974, 977 (1984).

As we have already noted, 33 V.S.A. § 2581(d) requires proof that the false claim was "knowingly" filed. The extent of defendant's familiarity with claim procedure was relevant to the issue of defendant's knowledge, and the court could have found the evidence of amounts previously claimed more probative than unfairly prejudicial, particularly where a limiting instruction was given along with the opportunity to cross-examine. While the court could have reduced potential prejudice by restricting the director's answer to the number, and not the dollar amount, of claims filed by defendant, reversal should not be ordered "simply because an appellate court believes that it would have decided the matter otherwise . . . ." *Long*, *supra*, 574 F.2d at 767. We find no abuse of the trial court's discretion.

## VI.

Finally, defendant appeals the trial court's denial of his motion to suppress documentary evidence obtained in execu-

tion of a search warrant issued by a district judge before charges were filed. More specifically, he seeks suppression of certain pharmacy records (the prescription receipt log and prescriptions of non-Medicaid customers) that were taken from defendant's barn during the search.

## A.

Defendant claims there was insufficient basis for the search warrant to issue. He challenges the court's conclusion that there was probable cause to believe certain documents existed, although from the outset he has conceded that probable cause existed to believe that documents otherwise properly sought would be found in his barn. Under the United States Supreme Court's decision in *Massachusetts* v. *Upton,* — U.S. —, —, 104 S. Ct. 2085, 2086 (1984), the reviewing court's duty is simply "to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."

The fourteen-page affidavit supporting the State's request for a search warrant sought as evidence of crime:

(a) Provider copy Medicaid Pharmacy Invoices and Remittance Advices;

(b) correspondence, letters, memos and other written information pertaining to participation as a health care provider in the Vermont Medicaid program;

(c) correspondence, letters, memos and other written communications with the Vermont Department of Social Welfare, the Vermont Board of Pharmacy, Blue Cross-Blue Shield Medicaid business agents and Electronic Data Systems Federal Corporation;

(d) drug inventory records (Vendor Invoices and credit slips);

(e) controlled substances invoices and inventory records;

(f) drug price lists;

(g) ordering book or records listing drugs ordered from wholesalers;

(h) prescriptions and prescription records for Medicaid recipients;

(i) patient profile cards for Medicaid recipients.

The affidavit stated that defendant had been a Medicaid provider for more than three years, and that the Attorney General's Medicaid Provider Fraud Unit began investigating defendant for generic substitution upon a complaint from the Welfare Fraud Division of the Department of Social Welfare. In that investigation another local pharmacist found that, when former customers of defendant's pharmacy presented vials labeled by defendant as brand-name drugs for refill at her pharmacy, the vials contained generic substitutes. Tests corroborated this finding.

Defendant prepared all prescriptions and Medicaid claims himself. He was required by state and federal law and regulation to keep "proper" and "accurate" records, to agree to permit inspection and review of his documents and records relating to drug claims when requested, and to provide them upon subpoena or request. 26 V.S.A. § 2032(e); 42 C.F.R. §§ 431.107(b), 455.18; Vt. Medicaid Reg. M154; Vt. Pharmacy Bd. Regs. 2.6(3) and 2.2(2). When investigators visited defendant at his pharmacy, he refused to permit access to records and later repeated his refusal, in writing, through his attorney. Upon closing his pharmacy, defendant was informed by the State Pharmacy Board that his business records must be kept for two years.[2] Defendant informed the Board in writing that all pharmacy records had been removed to his barn.

The affidavit also stated that when defendant learned of the generic substitution investigation, he told a former employee that he could not remember how often he had filed brand-name reimbursement claims for dispensations of generic drugs; he also said that examination of the pharmacy's inventory purchases would reveal that his claims could not be supported.

 On the basis of the information before the court, we conclude that the evidence viewed as a whole provided a "substantial basis" for the trial court's finding of probable cause, *Upton, supra,* — U.S. at —, 104 S. Ct. at 2088, to believe not only that the requested documents existed, but also (as conceded) that they could be found in defendant's barn.

___
[2] Actually, regulations require that such records be kept for five years. Vt. Pharmacy Bd. Reg. 2.10(2).

B.

Defendant argues that the warrant did not authorize the officer to seize either the pharmacy's prescription receipt log or its non-Medicaid prescriptions.

(i)

The trial court ruled that the warrant's authorization to seize "drug price listings" (defined in the affidavit as "original business records reflecting the price charged for drugs at Dorn's Apothecary") included the prescription receipt log. The court explained that the prescription receipt log was defendant's usual business tabulation of "a series of entries of, among other information, prices charged for drugs dispensed" and found that the affiant could not be more precise "because he did not know the log existed." The court held that the term "drug price listings" sufficiently described the prescription receipt log to justify seizure under the warrant.

Defendant claims that, thus construed, the warrant fell below constitutional particularity standards. We disagree.

The Fourth Amendment to the United States Constitution requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." It is generally recognized that the particularity requirement must be applied "with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of the activity under investigation permit." *United States* v. *Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983). "Where the search is for business records generally, . . . a general description is often all that is possible . . . ." *State* v. *Tidyman*, 30 Or. App. 537, 545, 568 P.2d 666, 671–72 (Or. Ct. App. 1977); see also *United States* v. *Zanche*, 541 F. Supp. 207, 210 (W.D.N.Y. 1982) (where scope of fraud was unknown, warrant authorizing seizure of records of all disbursements was not overbroad). Under Chapter I, Article 11 of the Vermont Constitution, this Court has held that property to be seized should be described "as nearly as may be." *Lincoln* v. *Smith*, 27 Vt. 328, 347 (1855).

▉ In this case, defendant rebuffed proper official requests for access to his pharmacy records, despite requirements of both state and federal regulations that he make such records available for inspection when requested. As a result, it was impossible for the investigators to ascertain exactly what records defendant had. Under these circumstances, greater advance specificity than that provided in the nine detailed categories of evidence excerpted above was not constitutionally required, and the phrase "drug price listings," as further defined in the affidavit, was sufficiently precise to authorize seizure of the prescription receipt log.

### (ii)

Regarding the seizure of non-Medicaid prescriptions, the court noted that the warrant only authorized seizure of "prescriptions and prescription records for Medicaid recipients." The court found that, during the search of the barn, the officers executing the warrant realized that boxes contained both Medicaid and non-Medicaid prescriptions. The court also found that the officers realized, in sorting the prescriptions, that Medicaid and non-Medicaid customers had been charged different prices for identical items.

At that time, the court held, the officers had probable cause to believe a crime had been committed, of which the non-Medicaid records constituted evidence. Because the officers inadvertently discovered incriminating data in the unsought non-Medicaid prescriptions, the court held that seizure of the documents was permitted under the "plain view" exception to the warrant requirement, as set forth in *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971).

Assuming that the court correctly concluded that the warrant itself did not authorize seizure of non-Medicaid prescriptions,[3] and assuming that seizure of the pharmacy records from the barn required that a warrant based upon full probable cause be obtained, we nevertheless affirm.

▉ Two of the essential requirements for plain view seizure, under *Coolidge,* are (1) that the discovery must be in-

---

[3] We note, however, that the warrant expressly authorized seizure of "drug inventory records."

advertent, and (2) that the incriminating nature of articles seized must be immediately apparent. *Id.* at 465–71.

In this case, the officers did not engage in unconstitutional "general, exploratory rummaging" of the defendant's files in order to identify incriminating documents to seize; such a practice would have been improper. *Id.* at 467; *United States* v. *Medows,* 540 F. Supp. 490, 498 (S.D.N.Y. 1982). The evidence establishes that the scope of the search was confined to the terms authorized. In order to carry out the search, the officers had to look at the various documents within each box in which the records were kept. "In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen* v. *Maryland,* 427 U.S. 463, 482 n.11 (1976). We do not hesitate to recognize a "plain view" exception to scrutiny of unrequested documents in this particular case, where the officers were legally on the premises and where the search was limited to only those boxes in which the requested documents were stored. Compare *United States* v. *Damitz,* 495 F.2d 50, 56 (9th Cir. 1974) (under warrant to seize marijuana, notebook found nearby, containing series of numbers, was properly seized), with *United States* v. *Wright,* 667 F.2d 793, 799 n.7 (9th Cir. 1982) (distinguishing *Damitz,* because notebook was not "in close proximity to other incriminating evidence").

The seizure of non-Medicaid prescriptions, after inadvertent discovery, while sorting, of obvious incriminating price discrepancies, was permitted under the "plain view" exception to the warrant requirement of the Fourth Amendment. *Coolidge* v. *New Hampshire, supra,* 403 U.S. at 465–71.

*Affirmed.*