NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 39

No. 2016-145

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Randall J. Sheperd | November Term, 2016 |

Alison S. Arms, J. (motions for forfeiture and to suppress); Robert A. Mello, J. (costs)

James A. Hughes, Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Sarah Star, Appellate Defender, Montpelier, for
 Defendant-Appellant.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.  **ROBINSON, J.**  In this case involving multiple counts of cruelty to animals, defendant appeals the trial court's denial of a motion to suppress and its order imposing costs for the care of forfeited animals. With respect to the suppression motion, defendant argues that: (1) the warrant was unconstitutionally broad in allowing the search for and seizure of any animal found at defendant's home; (2) there was no veterinarian present during execution of the warrant as required by statute; (3) and the court improperly placed the burden of proof on defendant at the suppression hearing. He also argues that the court abused its discretion in ordering him to repay costs incurred in housing the forfeited animals in the amount of $51,070. We affirm the trial court's rulings on the first three issues, but we reverse and remand for reconsideration of the court's order regarding statutory costs of care for the forfeited animals.

¶ 2.     The trial court made the following findings of fact.  In February 2015, an animal control officer responded to a complaint concerning dogs at defendant's home.  When the officer arrived, she heard barking coming from the house.  Defendant's daughter answered the door and told the officer that defendant was not home, and the officer offered to leave a bag of dog food at the house.  The officer retrieved the bag of food from her car, and when she returned to the house a dog appeared from under a blanket on the porch.  The temperature was thirty degrees below zero, the porch was not protected from the elements, and the officer saw no sign of dog food or water nearby.  According to the officer, the dog appeared emaciated and too weak or cold to stand.  She knocked on the door to tell the daughter that she should take the dog inside, but nobody answered.  At that time, the officer saw two more dogs in the house and heard barking coming from inside.

¶ 3.     The officer's observations at defendant's home and her concerns for the dogs prompted her to first contact the state's attorney and the state police, and then to obtain a search warrant for the house.[1]  The warrant authorized the search for and seizure of two specific dogs, a male and female pit bull, as well as "any additional pit bull or pit bull mix dogs on the premises."  The warrant also included the sentence, "I would like to search inside and outside the home for any additional animals."  The warrant was issued pursuant to 13 V.S.A. § 354(b)(2), which allows a humane officer to apply for a search warrant upon probable cause that an animal is being subjected to cruelty.[2]  That statute provides that "[a] veterinarian licensed to practice in Vermont must accompany the humane officer during the execution of the search warrant."  Id.

---

[1]  The search warrant was apparently based on not only the animal control officer's direct observations, but also her report that defendant had voluntarily relinquished a dog to a deputy sheriff, who had observed "four additional puppies in distress."  We draw this inference not from the record, because the affidavit supporting the search warrant was never offered into evidence, but from defense counsel's representations in the motion to suppress.

[2]  13 V.S.A. § 351(4) includes animal control officers under the definition of "humane officer."

2

¶ 4.    The officer executed the warrant on February 5, 2015 at around 4:00 p.m.  She was accompanied by her supervisor and state troopers, but not a veterinarian.  A veterinarian had been contacted, but was unable to be present.  When they arrived at defendant's home, the temperature was below zero and the officer noticed that the dog she saw during her previous visit was still on the porch; this dog was eventually taken from the house during the search.  Defendant answered the door, the officer presented him with the search warrant, and he allowed them inside.

¶ 5.    Once in the kitchen, defendant locked one dog in the bathroom after explaining that the dog had a propensity to bite.  There was another dog in a crate.  One of the troopers reported that the crated dog was extremely thin, with its ribs and hips visible through its skin, and was in need of medical attention.  The animal control officer removed these two dogs from the house.  The officer found two more dogs upstairs and took them from the house.  The troopers later reported that the house smelled strongly of dog feces and urine.  The troopers asked defendant if he had any more dogs and defendant told them there were two more in the basement.  The basement was only accessible from the outside and when the troopers went to look for the dogs there were no fresh footprints in the snow, indicating that defendant had not checked on the dogs since the snow stopped falling that morning.  The troopers opened the door to discover an unlit, cold basement with a cement floor covered in dog feces and urine.  The troopers found and removed two dogs from the basement, both of whom were skinny, malnourished, and had patches of fur missing.

¶ 6.    Altogether, the animal control officer found and took seven dogs from defendant's house during the search.  The officer and troopers reported that all were thin, appeared unhealthy, and had fleas.  They observed that several had patchy fur and visible ribs, backbones, and hips.  The dogs were taken to another location where the director of a nearby animal rescue organization examined them further.  The director reported that the dogs were emaciated and dehydrated, and their appearance showed that they were being deprived of food, water, and medical care.  The dogs

were given food, water, and blankets for the night. The next morning, they were examined by a veterinarian who later testified that almost all the dogs were underweight and had skin conditions, patchy fur, very long nails, and fleas.

¶ 7.     The State filed a motion for forfeiture of the dogs on April 3, 2015, and defendant filed a motion to suppress on April 10. The trial court held a hearing on August 19, 2015 to address both motions but continued the matter after hearing from several witnesses because the court had another hearing scheduled at that time. The next hearing was not held until February 3, 2016, at which time the court continued the case again to provide the State with additional time to organize and prepare witnesses. On March 2, 2016, the court heard testimony from more witnesses but again continued the case, partly because the veterinarian who examined the dogs after they were taken from the house could not be at the hearing. The court heard from the remaining witnesses on March 30 and issued a written decision on the suppression motion and the forfeiture request that day.

¶ 8.     The court denied defendant's motion to suppress. Defendant's motion argued that the warrant was not supported by probable cause, that the warrant was overly broad, and that the execution of the warrant was improper because there was no veterinarian present. The court rejected defendant's argument that the warrant was not supported by probable cause because defendant did not submit to the court any of the supporting evidence underlying the warrant request; thus, defendant failed to meet his burden in showing that the warrant was not supported by probable cause. The court concluded that the warrant was not impermissibly broad because it limited the search to pit bulls and pit bull mixes after the issuing court received reliable information establishing probable cause to believe some number of pit bulls in the home were being subjected to cruelty. Lastly, it determined that the execution of the warrant was not unreasonable because, although 13 V.S.A. § 354(b)(2) calls for a veterinarian to be present during the search, the statute did not provide a remedy in the case of a violation and suppression was therefore not appropriate.

4

¶ 9. The court granted the State's forfeiture motion with respect to all but one of the dogs pursuant to 13 V.S.A. § 354(f)(1).[3] The court concluded that this dog, who was not as unhealthy as the others, "was not subjected to cruelty, neglect, or abandonment" and therefore was not subject to forfeiture. Pursuant to the forfeiture statute, the court ordered that defendant repay all reasonable costs incurred by the custodial caregiver for caring for the animals, including veterinary expenses. The court set a further hearing regarding these costs.

¶ 10. At the April 5 hearing on costs, the court received uncontested evidence that the Franklin County Humane Society, which housed the forfeited dogs from February 5, 2015 until the court's March 30, 2016 forfeiture, spent $1270 for testing, medication, and veterinary treatment for the dogs. The Humane Society also sought daily charges of $20 per day per dog for boarding the animals during that period. Defendant argued that the daily charges for boarding sought by the Humane Society were not direct "costs incurred," since they represented primarily overhead costs to the Humane Society. He also contended that he should not be responsible for all 415 days the dogs were housed because much of the delay in this case was caused by the court and the State.

¶ 11. In its written decision the next day, the court rejected both arguments. On the first, it reasoned that caring for animals requires more than just food and veterinarian bills. The Humane Society must pay their heating bill, staff salaries, and property taxes to keep the animals warm and cared for. Regarding the second argument, the court concluded that the statute required payment for all the reasonable costs incurred by a custodial caregiver and did not contain any exceptions that would allow the court to reduce the number of days for which the Humane Society was reimbursed. The court ordered defendant to pay the Humane Society $51,070 pursuant to the statute.

---

[3] The court's forfeiture order also encompassed a dog that defendant had given to a deputy sheriff prior to execution of the warrant. The costs associated with caring for this dog were not included in the trial court's subsequent order requiring defendant to pay those costs. Further explication of the circumstances surrounding this dog is not necessary in connection with the issues in this appeal.

¶ 12.    On appeal, defendant challenges the court's denial of his motion to suppress on three bases: (1) the warrant was unconstitutionally broad because it allowed for the search for and seizure of any animals found at defendant's home; (2) execution of the warrant was unlawful because there was no veterinarian present; and (3) the trial court improperly placed the burden of proof on defendant with respect to his probable cause challenge. He also argues that the court failed to exercise its discretion in determining the reasonableness of the total costs of the dogs' care. We consider each issue in turn.

¶ 13.    When reviewing the denial of a motion to suppress, we review a trial court's findings of fact under a clearly erroneous standard and its legal conclusions without deference. State v. Bryant, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467. Here, defendant is challenging only the trial court's legal conclusions so our review is plenary and nondeferential. Id.

I. Scope of the Warrant

¶ 14.    We reject defendant's argument that the warrant was unconstitutionally broad because it authorized the officers to search for and remove any animals, although the warrant only listed two specific pit bulls. Probable cause in this case supported the warrant's full scope and the warrant's language was sufficiently particular. We conclude on the record of this case that once the animal control officer established probable cause concerning the dog on the porch, she had probable cause to search for and seize all dogs at defendant's home.

¶ 15.    The United States and Vermont Constitutions require warrants to particularly describe the places to be searched and the things to be seized. U.S. Const. amend. IV; Vt. Const. ch. I, art. 11. The "principal evil" to be remedied by this requirement "was the issuance of general warrants and the concomitant vesting of officers of the state with unlimited discretion to intrude upon the privacy interests of particular individuals of their choice without particularized suspicion, in the hope of immediately discovering wrongdoing." State v. Martin, 2008 VT 53, ¶ 18, 184 Vt. 23, 955 A.2d 1144 (emphasis removed).

6

¶ 16. To be sufficiently particular, the scope of a warrant must not exceed the probable cause upon which it is based, United States v. Zimmerman, 277 F.3d 426, 432 (3d Cir. 2001), and it "must enable the executing officer[s] to ascertain and identify with reasonable certainty those items that the magistrate has authorized [them] to seize." United States v. George, 975 F.2d 72, 75 (2d Cir. 1992). Warrants that authorize the police to search for evidence of any crime, without linking the evidence to a particular illegal activity for which there is probable cause, are unconstitutionally broad. See id. at 75-76 (holding warrant allowing search for "any other evidence relating to the commission of a crime" too broad because "[n]othing on the face of the warrant tells the searching officers for what crime the search is being undertaken"). On the other hand, the particularity requirement must be considered within the context of the surrounding circumstances; a warrant's description " 'will be acceptable if it is as specific as the circumstances and nature of the activity under investigation permit.' " State v. Dorn, 145 Vt. 606, 619, 496 A.2d 451, 458 (1985) (quoting United States v. Wuagneux, 683 F.2d 1343, 1249 (11th Cir. 1982)), abrogated on other grounds by Horton v. California, 496 U.S. 128 (1990).

¶ 17. Additional considerations come into play when a warrant calls for the search for and seizure of animals. This Court has recognized that nonhuman animals occupy a unique legal status in that they have traditionally been regarded as property but are nonetheless "different from other property." Hament v. Baker, 2014 VT 39, ¶ 8, 196 Vt. 339, 97 A.3d 461. Accordingly, animals "generally do not fit neatly within traditional property law principles," but instead "occup[y] a special place somewhere in between a person and piece of personal property." Morgan v. Kroupa, 167 Vt. 99, 103, 702 A.2d 630, 633 (1997) (quotation omitted). Various laws limit peoples' ownership rights over animals, requiring them to provide a minimum level of care to animals in their possession and prohibiting them from treating animals the same way they might treat true, nonsentient property. See, e.g., 13 V.S.A. §§ 352, 352a (criminalizing cruelty to animals); id. § 386 (prohibiting confinement of animals in motor vehicles when conditions are

7

dangerous, and allowing state agents to remove animals from a vehicle to prevent harm). This special treatment of animals reflects a recognition that animals are living, sentient beings to which the law may provide protections in their own right. Hament, 2014 VT 39, ¶ 8.

¶ 18. Other states have considered the role of animals' special legal status in the context of searches and seizures. These cases establish that the treatment of animals is different from that of other types of property in this area of the law and that animal welfare is a factor we must consider when determining whether a search or seizure was lawful. For example, the Oregon Supreme Court in State v. Newcomb, 375 P.3d 434, 444-45 (Or. 2016) recently held that a warrant is not needed to draw and test the blood of a dog lawfully seized based on probable cause that the dog was neglected. The purpose of the blood test was to determine whether an unknown medical condition or starvation caused the dog's malnourishment, and therefore to ensure that the dog received proper treatment. The defendant argued that the blood test was an unlawful search, as Oregon law requires the state to obtain a warrant before searching the interior of lawfully seized property, when the contents are not apparent from the property's exterior. The court examined the animal's legal status in depth and declined to view the dog as "an opaque inanimate container in which inanimate property or effects were being stored." Id. at 442. Instead, the court reasoned that although a dog is legally considered personal property,

> Oregon law simultaneously limits ownership and possessory rights in ways that it does not for inanimate property . . . . Live animals under Oregon law are subject to statutory welfare protections that ensure their basic minimum care, including veterinary treatment. The obligation to provide that minimum care falls on any person who has custody and control of a dog or other animal. A dog owner simply has no cognizable right, in the name of [his or] her privacy, to countermand that obligation.

Id. at 443. The court emphasized the importance of providing appropriate medical care to the dog, ultimately holding that "[a]n examination of the dog's physical health and condition in that circumstance, pursuant to a medical judgment of what is appropriate for diagnosis and treatment,

is not a form of government scrutiny that, under legal and social norms and conventions, invades a dog owner's protected privacy rights." Id.

¶ 19. By the same token, multiple states have held that the exigent circumstances exception to the warrant requirement allows state agents to conduct a warrantless search or seizure in order to prevent an imminent threat to a nonhuman animal's well-being. See Commonwealth v. Duncan, 7 N.E.3d 469, 474 (Mass. 2014); State v. Stone, 2004 MT 151, ¶ 39, 92 P.3d 1178; State v. Fessenden, 310 P.3d 1163, 1169 (Or. Ct. App. 2013). The Vermont Legislature has codified this exception in 13 V.S.A. § 354(b)(3), which allows a humane officer to seize an animal without a warrant if the officer "determines that an animal's life is in jeopardy and immediate action is required to protect the animal's health or safety." These examples all establish that a defendant's property rights over animals are limited when animal welfare is at risk, and we must take the animals' welfare into consideration when determining the legality of a search or seizure.

¶ 20. The warrant in this case allowed the animal control officer to search for and seize two particular pit bulls and "any additional pit bull or put bull mix dogs."[4] The officer, who had held that position for two years and had fifteen years of prior experience as a veterinary technician, observed one pit bull on defendant's porch during an exceptionally cold day. The dog appeared emaciated and unable to stand, and there was no food or water in sight. She also saw two dogs inside the home and heard barking coming from additional, unseen dogs inside, providing evidence that the apparently neglected dog on the porch was only one of several dogs at defendant's home.[5] The exceptionally neglected condition of the dog on the porch reasonably supported a probable

---

[4] The handwritten notation that expanded the search to additional pit bulls also included the sentence, "I would like to search inside and outside the home for any additional animals." The meaning of this notation in the context of a warrant is not entirely clear. Insofar as all the animals seized were found to be pit bulls or pit bull mixes, we need not rule on the effect of this language.

[5] As noted above, see supra, n.1, the warrant was apparently also based on the observations of a deputy sheriff who reportedly saw "four additional puppies in distress." This evidence further buttresses the inference that multiple dogs in defendant's home were the subject of neglect.

9

cause finding to support a search for and seizure of not only that dog, but also the others reasonably believed to be at the home. See Schulz v. Gendregske, 544 F. App'x 620, 624 (6th Cir. 2013) (concluding, in § 1983 suit, that observing some mistreated animals in poor conditions is sufficient for officer to "reasonably believe [defendants] were likely mistreating all the animals in their care" because "common sense suggests" that evidence of mistreatment of some animals suggests owners are likely mistreating all their animals); cf. E.J.R. v. Young, 162 Vt. 219, 224, 646 A.2d 1284, 1287 (1994) (holding that in some cases evidence of a pattern of abuse or neglect as to one sibling can support finding that another is at risk of abuse or neglect). On these facts, it was not necessary for the warrant to limit the search to a particular dog breed, although, as noted above, the seized dogs all fit within the breed specified in the warrant.

¶ 21.    Given this context, the language was sufficiently particular. The warrant was far from those found unconstitutional because they allow the unfettered search for evidence of unknown crimes. See, e.g., Cassady v. Goering, 567 F.3d 628, 635 (10th Cir. 2009) (holding warrant allowing search for "all other evidence of criminal activity" unconstitutionally broad because it "did not confine the scope of the search to any particular crime"); United States v. Stefonek, 179 F.3d 1030, 1032 (7th Cir. 1999) (holding warrant allowing search for "evidence of crime" unconstitutionally broad). On the contrary, this warrant authorized the search and seizure of pit bulls and pit bull mixes, and was "no broader than the probable cause on which it [was] based." Zimmerman, 277 F.3d at 432 (quotation omitted). It did not allow an unconstitutional "general, exploratory rummaging" of defendant's belongings. Dorn, 145 Vt. at 621, 496 A.2d at 459 (quotation omitted).[6]  For these reasons, we conclude that the warrant in this case was not unconstitutionally broad.

---

[6]  We note that the humane officer's authority to seize animals on the premises was not necessarily limited by the terms of the warrant. 13 V.S.A. § 354(b)(3) authorizes warrantless seizures when an officer "determines that an animal's life is in jeopardy and immediate action is required to protect the animal's health or safety." Because the search and seizure here was authorized by the warrant, we need not consider the application of this subsection in this case.

10

## II. Execution of the Warrant Without a Veterinarian

¶ 22. We conclude that suppression is not the appropriate remedy for the animal control officer's failure to include a veterinarian in the execution of the warrant, as required by 13 V.S.A. § 354(b)(2). That statute specifically requires: "A veterinarian licensed to practice in Vermont must accompany the humane officer during the execution of the search warrant." There is no dispute that the warrant in this case was executed without the presence of a licensed veterinarian, but we conclude that this failure to conform to the statute does not require suppression.

¶ 23. Evidence obtained in violation of certain state statutes may be suppressed at trial. State v. Gilman, 173 Vt. 110, 115, 787 A.2d 1238, 1243 (2001). We have held that suppression may be appropriate even when a statute does not explicitly call for this remedy. Id. at 115, 787 A.2d at 1242. The purpose of our state exclusionary rule is to discourage official misconduct, protect individual rights, and preserve the integrity of the judicial process. State v. Oakes, 157 Vt. 171, 173-74, 598 A.2d 119, 121 (1991).

¶ 24. Whether suppression is the appropriate response to the violation of a statutory requirement is a question of legislative intent. See Gilman, 173 Vt. at 117, 787 A.2d at 1244 (holding that suppression was appropriate when "[n]oncompliance with the statute produced exactly the situation the Legislature sought to avoid"); State v. Bean, 163 Vt. 457, 465, 658 A.2d 940, 946 (1995) (holding that suppression was appropriate when "the consequences of the violation are exactly what the rule was intended to prevent."). Other states likewise look to legislative intent to determine the proper remedy for statutory violations. See People v. Sobczak-Obetts, 625 N.W.2d 764, 768 (Mich. 2001); State v. Smith, 908 A.2d 786, 788 (N.H. 2006); State v. Popenhagen, 2008 WI 55, ¶ 68, 749 N.W.2d 611.

¶ 25. In contrast to the statutes at issue in the above-cited Vermont cases, the statute outlining the process for executing a search warrant does not evince a legislative intent that failure to have a veterinarian at the execution of the warrant should result in suppression. Defendant

11

argues that the purpose of the veterinarian requirement is to protect the privacy interests of those suspected of animal cruelty. Defendant's theory seems to be that the veterinarian can step in and prevent seizure of an animal in the veterinarian's discretion. However, a closer reading of the statute suggests otherwise. As § 354(b)(2) requires, probable cause of animal cruelty is already established by the time the humane officer executes the warrant. This means that a court has authorized the officer to seize animals within the scope of a warrant. Nothing in the statute empowers the veterinarian to override the officer's authority to remove certain animals. The veterinarian requirement, in other words, "[does] not in any way lead to the acquisition of evidence," Sobczak-Obetts, 625 N.W.2d at 777, and no evidence "came into existence because of a lack of compliance," because the officer was authorized to take all animals at defendant's house whether or not a veterinarian was present. Bean, 163 Vt. at 466, 858 A.2d at 946.

¶ 26. In addition, another provision in the statute, § 354(b)(3), reveals that the more likely purpose of the veterinarian's presence is to provide emergency medical care. That provision, which allows for the seizure of animals without a warrant when "immediate action is required," directs the officer to take the animals to a veterinarian once the animals are seized—not to determine whether it was proper to seize them, but instead "for medical attention to stabilize the animal's condition and to assess the health of the animal." 13 V.S.A. § 354(b)(3). The difference between § 354(b)(2) and § 354(b)(3) is timing; in the former, it is presumed that the officer has enough time to contact a veterinarian before execution of the warrant. However, the purpose of the veterinarian for both situations is the same—to provide for the welfare of the animal or animals at issue.

¶ 27. Therefore, noncompliance with the veterinarian requirement of § 354(b)(2) does not trigger the exclusionary rule and the suppression of evidence found during the search. Applying the exclusionary rule to guarantee statutory protections may be appropriate in some cases, but the statutory provision at issue here—the requirement of a veterinarian's presence—was

not included to protect defendants. This is what distinguishes this case from previous ones in which we applied the exclusionary rule to suppress evidence obtained because of a statutory violation. In those cases, violating the relevant statute robbed defendant of statutory protections. See Gilman, 173 Vt. at 115, 787 A.2d at 1242 (involving defendant's right to counsel before deciding whether to consent to blood alcohol test); State v. Madonna, 169 Vt. 98, 102, 726 A.2d 498, 501 (1999) (involving "right to contact a public defender regardless of financial position" when detained for driving under the influence); State v. Karmen, 150 Vt. 547, 548-49, 554 A.2d 670, 671 (1988) (involving right to demand blood test when detained for driving under the influence). The veterinarian requirement, in contrast, stems from a concern for animal welfare and not for defendants' individual rights. For these reasons, we conclude that the absence of a veterinarian during execution of the warrant does not require suppression of evidence found during the search.

### III. Burden at the Suppression Hearing

¶ 28. Next, we conclude that the trial court was correct in placing the burden of proof on defendant during the suppression hearing. Before the trial court, defendant contended that the search warrant was not supported by probable cause. However, defendant supplied the court only with the warrant itself and did not offer into evidence the affidavit or any supporting documents on which the warrant was based. The court concluded that the burden of proof was on defendant during the suppression hearing, and that defendant failed to carry that burden. Defendant argues that the trial court erred in placing the burden on him.

¶ 29. We agree with the trial court that a defendant generally bears the burden of proof at suppression hearings when challenging the validity of a warrant. This Court has not specifically addressed the question of who bears the burden of proof when the defendant argues that the warrant was not supported by probable cause. We have, however, placed the initial burden on defendants when they move to suppress evidence on other grounds. See State v. Harris, 2009 VT 73, ¶ 6, 186

13

Vt. 225, 980 A.2d 785 ("In a motion to suppress based on an illegal search or seizure, the defendant bears the burden of proving that a seizure occurred."); State v. Demers, 167 Vt. 349, 353, 707 A.2d 276, 278 (1997) (holding that defendant bears initial burden of proof when "challeng[ing] a probable cause finding on grounds that the supporting affidavit contains false information or omissions").

¶ 30.     Additionally, other courts have generally accepted that the defendant bears the burden of proving that a warrant is not supported by probable cause. See United States v. Esser, 451 F.3d 1109, 1112 (10th Cir. 2006) ("Generally, the defendant has the burden of showing a constitutional infirmity if a search or seizure was carried out pursuant to a warrant"); United States v. Rodriguez-Suazo, 346 F.3d 637, 643 (6th Cir. 2003) (holding that, when defendant challenges probable cause determination, "[i]t is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right" (quotation omitted)); United States v. Richardson, 943 F.2d 547, 548 (5th Cir. 1991) ("The defendant challenging a search must show the warrant to be invalid by a preponderance of the evidence").

¶ 31.     The reasoning behind these decisions is sound.  When the police conduct a search pursuant to a warrant, "an independent determination on the issue of probable cause has already been made by a magistrate, thereby giving rise to a presumption of legality."  3 W. LaFave, et al., Criminal Procedure § 10.3(b) (4th ed. 2016) (quotation omitted).  As the proponent of the motion, defendant must rebut this presumption.

¶ 32.     Therefore, we conclude that defendants do bear the burden of proof when arguing that evidence should be suppressed because a warrant was not supported by probable cause. Defendant argues that the court wrongly "shifted" the burden to him because it did not inform him that it did not have the warrant's supporting documents.  Even if defendant was under the impression that the court possessed the necessary documents, the burden was always on him to

14

ensure that that belief was accurate. Defendant did not even satisfy his burden of production, let alone his burden of proof.

## IV. Reasonableness of the Repayment Order

¶ 33. Finally, we conclude that the trial court erroneously failed to exercise its discretion when it held that it could not consider the length and reason for substantial delays in the forfeiture case in imposing on defendant the cost of caring for the dogs pursuant to 13 V.S.A. § 354(g)(1). Defendant argues that delays following the forfeiture motion, most of which were requested by and benefitted the State, drove up the cost of caring for the dogs, and that he should not be responsible for costs—amounting to $51,070—that accrued through no fault of his own. The trial court held defendant accountable for the entire amount, reasoning that "[d]efendant seeks to reduce the number of days by the days of delay for which he was not responsible, but the statute contains no such exception." We conclude, based on the plain language of the statute, that the trial court does have the power to consider the reasonableness of the fine to be imposed, which includes considering the reasons why the fine was so large.

¶ 34. We review questions of statutory interpretation without deference. See Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893. If the language of a statute is clear, we "apply the statute in accordance with its plain meaning." Id.

¶ 35. The statute at issue provides that, "if an order of forfeiture is entered against an owner under this section, the defendant or owner shall be required to repay all reasonable costs incurred by the custodial caregiver for caring for the animal, including veterinary expenses." 13 V.S.A. § 354(g)(1) (emphasis added). We have previously held that the plain meaning of this statute empowers the trial court to "determine whether the claimed costs were reasonable," but this determination does not include considering the defendant's ability to pay. State v. Eldredge, 2006 VT 80, ¶ 10, 180 Vt. 278, 910 A.2d 816. We conclude that determining "reasonable costs" does include consideration of the factors that contributed to the cost; in this case, that includes

15

consideration of the length of and the reasons for the delay in the forfeiture case. A prolonged delay of a forfeiture motion may render certain costs unreasonable under 13 V.S.A. § 354(g)(1). Insofar as the trial court concluded that it did not have discretion to take into account whether delays caused by the State or court rendered its assessment against defendant unreasonable, it failed to exercise its discretion. We remand to the trial court to reconsider the reasonableness of the cost of caring for the forfeited animals.

The trial court's order as to defendant's motion to suppress is affirmed. The trial court's order as to the costs for the care of defendant's forfeited animals is vacated and remanded for reconsideration consistent with the above.

FOR THE COURT:

_____

Associate Justice