NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 65

No. 2017-262

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Emily K. St. Peter | May Term, 2018 |

Thomas A. Zonay, J. (motion to suppress); Cortland Corsones, J. (final judgment)

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson and Carroll, JJ., and Morris, Supr. J. (Ret.),
Specially Assigned

¶ 1. **ROBINSON, J.** Defendant Emily St. Peter appeals her conviction on five counts of cruelty to animals. She argues that the court erred in declining to suppress evidence about five horses she voluntarily surrendered during a cruelty investigation.[*] In particular, defendant contends that because the humane officer failed to have the horses timely examined and assessed by a licensed veterinarian within seventy-two hours of her voluntary surrender of them, as required by 13 V.S.A. § 354(b)(1), the court should have excluded any evidence acquired by a humane officer, veterinarian, or other witness following that surrender. We conclude, based on our

---

[*] Defendant was convicted of three additional counts of animal cruelty involving other horses, but does not challenge those convictions on appeal. Accordingly, we do not here recount the evidence and motions below relating to those three counts.

reasoning in <u>State v. Sheperd</u>, 2017 VT 39, __ Vt. __, 170 A.3d 616, that the trial court properly declined to grant defendant's suppression motion, and accordingly affirm.

¶ 2.    In February 2015, the State charged defendant with several counts of animal cruelty alleging that she deprived eight horses of adequate food, water, shelter, or necessary medical attention. The State alleged that all eight horses showed signs of malnourishment, malnutrition, and overall neglect of their needs for the past ten to twelve months.

¶ 3.    Defendant filed a motion to suppress all evidence that had been acquired by any law enforcement or humane officer, veterinarian, or other witness following her voluntary surrender of the horses identified in counts four through eight to the humane officer who spearheaded the cruelty investigation. In her motion, she noted that the humane officer acknowledged in deposition testimony that the horses in question were not seen by a "veterinarian licensed to practice in the State of Vermont" for more than a week after they were surrendered. See V.S.A. § 354(b)(1). This delay ran afoul of the requirements of Vermont law, which provides:

> (1)  Voluntary surrender. A humane officer may accept animals voluntarily surrendered by the owner anytime during the cruelty investigation. The humane officer shall have a surrendered animal examined and assessed within 72 hours by a veterinarian licensed to practice in the State of Vermont.

<u>Id</u>. Defendant argued that the appropriate remedy for this failure was to suppress all post-surrender evidence concerning the horses.

¶ 4.    The trial court denied the motion, reasoning that the timing requirement in § 354(b)(1) is "directory" and not "mandatory" because the Legislature did not set forth a consequence for failing to comply with the seventy-two-hour evaluation requirement. The court analogized the situation to that of lost evidence and concluded that the proper remedy would be to give a jury instruction that addressed the "lost" evidence—namely, evidence of the horses' condition within the required seventy-two-hour window. At trial, the court instructed the jury that because the humane officer had failed to ensure that the horses were seen by a veterinarian within

2

the required time after the surrender, the jury should presume that the condition of the horses did not change from the time of surrender to the time of the examination.

¶ 5.    The jury ultimately convicted, and on appeal, defendant renews her argument that the trial court should have suppressed the evidence concerning the five horses that were voluntarily surrendered.    Whether suppression is the proper remedy for the humane officer's undisputed failure to timely arrange a veterinary evaluation of the five horses at issue is a legal question that we review without deference.  State v. Bryant, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467.

¶ 6.    Although the direct holding of our decision in Sheperd is not dispositive on this issue, our reasoning is.  2017 VT 39, ¶¶ 22-27.  In Sheperd, a defendant sought to suppress evidence concerning animals seized pursuant to a search warrant because a veterinarian did not accompany the officer executing the warrant as required by 13 V.S.A. § 354(b)(2).  In analyzing the argument, we scrutinized the two other prongs of 13 V.S.A. § 354(b):

> (1)  Search and seizure using a search warrant.  A humane officer having probable cause to believe an animal is being subjected to cruel treatment in violation of this subchapter may apply for a search warrant pursuant to the Vermont Rules of Criminal Procedure to authorize the officer to enter the premises where the animal is kept and seize the animal.  The application and affidavit for the search warrant shall be reviewed and authorized by an attorney for the State when sought by an officer other than an enforcement officer defined in 23 V.S.A. § 4(11).  A veterinarian licensed to practice in Vermont must accompany the humane officer during the execution of the search warrant.

> (2)  Seizure without a search warrant.  If the humane officer witnesses a situation in which the humane officer determines that an animal's life is in jeopardy and immediate action is required to protect the animal's health or safety, the officer may seize the animal without a warrant.  The humane officer shall immediately take an animal seized under this subdivision to a licensed veterinarian for medical attention to stabilize the animal's condition and to assess the health of the animal.

¶ 7.    We acknowledged that suppression may be appropriate even when a statute does not explicitly call for the remedy, and we explained that whether violation of a statutory

3

requirement requires suppression of evidence turns on legislative intent. Id. ¶¶ 23-24. We concluded that the veterinarian requirement in § 354(b)(2) "stems from a concern for animal welfare and not for defendants' individual rights." Id. ¶ 27. That subsection, we reasoned, only applies once a humane officer has secured a warrant on probable cause and does not give the veterinarian any authority to override the authorization in the warrant. Id. ¶ 25. Moreover, § 354(b)(3), which authorizes seizure without a warrant if immediate action is required to protect the animal's health or safety, does not require the presence of a veterinarian at all—but does mandate that the humane officer immediately take a seized animal to a veterinarian "for medical attention to stabilize the animals' condition and assess the animal's health in such circumstances." Id. ¶ 26 (quotation omitted). The difference between the timing of the veterinarian requirement in the respective subsections reinforces a legislative intent to ensure that animals seized, whether pursuant to a warrant or emergency seizure, receive veterinary attention as soon as reasonably practicable—at the time the warrant is executed in the case of seizures pursuant to warrant, and immediately thereafter in the context of warrantless seizures. Id.

¶ 8. This reasoning applies with equal force to voluntary surrenders pursuant to § 354(b)(1). We see nothing in the language or structure of § 354(b) that suggests that the Legislature had a different intention with respect to the veterinarian requirement in § 354(b)(1) than the parallel requirements in §§ 354(b)(2) and (3). See, e.g., Lovejoy v. Morrison, 116 Vt. 453, 457, 78 A.2d 679, 681 (1951) (directing that to give effect to intention of legislature, court must consider "the whole and every part of the enactment" as well as other statutes concerning same subject). Because the timing of a voluntary surrender cannot be predicted by a humane officer, and a voluntary surrender does not necessarily imply the level of urgency or danger to an animal that is required for a warrantless seizure or a seizure pursuant to a warrant, it makes sense that the Legislature has afforded humane officers somewhat more time to arrange a veterinary examination—seventy-two hours from the surrender—in the case of voluntary surrenders. If

4

anything, this timing difference further reinforces that the veterinarian requirements throughout § 354(b) are directed at animal welfare and not the privacy or evidentiary interests of individuals charged with animal cruelty.  Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

FOR THE COURT:

_____

Associate Justice